13 A.3d 873

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DASHAWN MILLER, DEFENDANT–APPELLANT.

Argued November 30, 2010—Decided March 14, 2011.

110

*Stephen A. Caruso,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Debra G. Simms,* Special Deputy Attorney General, Deputy Chief Assistant Prosecutor, argued the cause for respondent (*Robert D. Laurino,* Acting Essex County Prosecutor, attorney; *Sara A. Friedman,* Special Deputy Attorney General, of counsel and on the brief).

*Robyn B. Mitchell,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Chief Justice RABNER delivered the opinion of the Court.

As advances in modern technology make their way into the courtroom, the Judiciary—like the rest of society—must adapt. With increasing frequency, courtrooms are being outfitted with digital recording equipment and no longer use court reporters. That development presents new issues when juries ask for recorded testimony to be played back during their deliberations. To aid trial judges who respond to those requests, we offer certain guidelines for the playback of video-recorded witness testimony.

In this case, a jury found defendant Dashawn Miller guilty of seven counts related to the robbery of two construction workers. During deliberations, the jury asked the trial judge to provide a read-back or playback of the testimony of one of the victims. Because the trial was videotaped and no court reporter was present, the judge permitted the jury to watch a video of the victim's testimony—both direct and cross examination—in open court. We find no error in the procedure the trial court followed, which largely comports with the approach outlined below.

Defendant also argues that the jury instructions violated his right not to testify and that the trial court failed to address the

requisite *Yarbough*[1] factors when it imposed consecutive sentences on the two robbery counts. We find no harm in the jury instructions and affirm defendant's conviction. However, we remand for resentencing for an appropriate *Yarbough* analysis.

## I.

On October 9, 2007, two construction workers, Benjamin Pichaya and Milton Dominguez, were installing hardwood floors at a multi-family house in Irvington. At about 3:00 p.m., defendant and a juvenile entered the house. Both were wearing white t-shirts and red caps. Defendant pointed a sawed-off shotgun at the workers while the juvenile searched their pockets and took $60 from Pichaya and $40 from Dominguez. The robbers also searched a third victim who had no money on him.

Once defendant and the juvenile left the house, Pichaya tried unsuccessfully to call the police on his cell phone. Dominguez then called his boss, who contacted the police but remained on the line. Next, Pichaya and Dominguez followed their assailants out of the building, and Dominguez relayed where the perpetrators were headed. When the victims saw the police arrive, they returned to their worksite.

Officer Jeffrey Kelly of the Irvington Police Department responded to the dispatch about the robbery. He spotted defendant and his accomplice—who matched the description broadcast on the radio—and drove toward them. He then jumped out of the car and ordered them to get on the ground. Defendant ran, while Officer Kelly restrained the juvenile. As defendant headed up the block, Officer Kelly saw him toss his jacket and something else toward a bush.

---

[1] *State v. Yarbough*, 100 *N.J.* 627, 498 *A.*2d 1239 (1985) (adopting criteria for trial judges to consider in determining whether concurrent or consecutive sentences are warranted), *cert. denied*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986).

Meanwhile, two other officers arrived and pursued defendant. They arrested him near an abandoned house in the area. Officer Kelly and another officer then searched the bushes where Kelly had seen defendant throw his jacket, and they retrieved a sawed-off shotgun. Soon after, the police transported Pichaya and Dominguez to the site of the arrest, and they both identified defendant and the juvenile.

On January 18, 2008, a grand jury in Essex County indicted defendant for the following offenses: second-degree conspiracy to commit robbery, *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1; two counts of first-degree robbery, *N.J.S.A.* 2C:15–1; second-degree burglary, *N.J.S.A.* 2C:18–2; third-degree possession of a sawed-off shotgun, *N.J.S.A.* 2C:39–3(b); second-degree possession of a firearm with an unlawful purpose, *N.J.S.A.* 2C:39–4(a); and fourth-degree resisting arrest, *N.J.S.A.* 2C:29–2(a).

A three-day trial began on August 26, 2008. Pichaya, Dominguez, and several police officers testified. In addition, a ballistics expert identified the recovered weapon as a sawed-off shotgun.

Defendant neither testified nor called any witnesses. The trial judge instructed the jury that it could "not consider for any purpose or in any manner . . . the fact that the defendant did not testify." The final sentence for that part of the charge declared that the defendant "is presumed innocent even if he chooses not to testify." Defense counsel did not object to the instruction, which was based on the model jury charge in existence at the time.

During deliberations, the jury sent a note with the following request: "Could we get a read-back or playback of Pichaya's testimony?" Because no court reporter was present at trial, the court stated that it would play the video of Pichaya's full testimony for the jury. Defense counsel objected, arguing that a playback "would have the effect of having the witness testify over again." After discussing and distinguishing this Court's decision in *State v. Burr*, 195 *N.J.* 119, 948 *A.*2d 627 (2008), the trial court found there would be no prejudice to defendant from a playback

and directed that the jury be permitted to view the entire video of Pichaya's testimony in open court, with all parties present.

The jury found defendant guilty on all seven counts. At sentencing, the trial court noted that defendant

entered the private home in Irvington in possession of a sawed-off shotgun and while armed committed a robbery against two separate individuals.

Indeed, during the course of the trial it came out that they attempted to rob a third individual, but he had nothing on his person and, therefore, took nothing of his person.

The court also reviewed defendant's criminal history at some length and observed that "from the very age of thirteen or thereabouts, [defendant] has engaged in a pattern of criminal activity that has continued unabated until this day." The court identified no mitigating factors but found three aggravating factors: the risk that defendant would commit another offense, *N.J.S.A.* 2C:44–1(a)(3); the extent of defendant's prior criminal record and seriousness of the offenses of conviction, *N.J.S.A.* 2C:44–1(a)(6); and the need to deter defendant and others from violating the law, *N.J.S.A.* 2C:44–1(a)(9).

For the robbery count relating to Dominguez, the court sentenced defendant to a fourteen-year term of imprisonment, subject to an 85–percent period of parole ineligibility under the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2. For the robbery count relating to Pichaya, the court imposed an identical, consecutive, fourteen-year term. The court did not mention the *Yarbough* factors or explain why the sentences on the robbery counts should run consecutively.

As to the remaining counts of conviction, the court merged two counts into the substantive robbery offenses and imposed shorter, concurrent sentences on the other three counts. The court also assessed mandatory fines, penalties, and assessments.

In a published decision, the Appellate Division affirmed defendant's conviction and sentence. *State v. Miller*, 411 *N.J.Super.* 521, 988 *A.*2d 104 (App.Div.2010). First, the panel found no error in the trial court's decision to allow the jury to watch a recorded

playback of Pichaya's testimony. The panel noted that reading back the testimony was not an available option without an adjournment, and it found no prejudice under the circumstances. *Id.* at 531–32, 988 *A.*2d 104. The judge's response to the jury's note, therefore, was not an abuse of discretion. *Id.* at 530, 988 *A.*2d 104. Second, the panel concluded that the jury "charge given in this case, read as a whole, had no capacity to lead the jurors astray" regarding defendant's decision not to testify. *Id.* at 533, 988 *A.*2d 104. Third, the court held that although "[t]here was no express mention of the *Yarbough* criteria warranting consecutive sentences for the two robberies," no remand for resentencing was required because the trial court's "factual findings implicitly address two factors identified in *Yarbough* that militate in favor of consecutive sentences for the robberies." *Id.* at 535, 988 *A.*2d 104. The panel deferred to the trial judge because it could "discern" that he had considered the relevant legal principles. *Id.* at 536, 988 *A.*2d 104 (quoting *State v. Cassady*, 198 *N.J.* 165, 182, 966 *A.*2d 473 (2009), and citing *State v. Bieniek*, 200 *N.J.* 601, 608–10, 985 *A.*2d 1251 (2010)).[2]

On May 17, 2010, we granted defendant's petition for certification. 202 *N.J.* 44, 994 *A.*2d 1040 (2010). We also granted the motion of the Attorney General to participate as amicus curiae.

## II.

Defendant raises three arguments. First, he contends that the trial court should not have permitted the jury to watch the video of Pichaya's testimony. He argues that the decision constituted reversible error because it "gives the State two bites of the apple and unduly emphasizes the witness[ ]' testimony."

Second, in an issue first raised on appeal, defendant claims that the jury charge—which stated that he was "presumed innocent even if he chooses not to testify"—violated his Fifth Amendment

---

[2] The panel also remanded to the trial court to make certain corrections to the judgment of conviction, which are not before this Court. *Miller, supra,* 411 *N.J.Super.* at 537–38, 988 *A.*2d 104.

right to remain silent. He contends that the use of the word "even" "telegraphs the message that the defendant should have testified."

Third, defendant argues that his sentence was excessive and that the trial court did not properly consider the relevant aggravating and mitigating factors. Defendant also maintains that his case should be remanded for resentencing because the trial court did not even mention the *Yarbough* factors or offer a statement of reasons for imposing consecutive sentences. Defendant contends that concurrent ten-year sentences are warranted here.

The State supports the Appellate Division's decision in its entirety. The State submits that the trial court did not abuse its discretion when it replayed Pichaya's recorded testimony in full. The State also argues that the jury instruction faithfully tracked the model jury charge and, when considered as a whole, did not have a propensity to mislead the jury. Finally, with regard to sentencing, the State contends that (a) the trial court imposed an appropriate, fair sentence after properly finding three aggravating and no mitigating factors, and (b) even though the court did not explicitly discuss *Yarbough*, it provided ample reasons for imposing consecutive sentences, which the Appellate Division correctly discerned from the record. At oral argument before this Court, the State conceded that it would not object to a remand for further consideration of the *Yarbough* factors.

The Attorney General, appearing as amicus curiae, recommends that because of the increasing use of digital recording equipment in courts throughout the State, this Court should issue guidelines for the playback of videotaped trial testimony.

### III.

We first consider defendant's challenge to the playback of Pichaya's videotaped testimony during jury deliberations.

### A.

Juries routinely ask to review trial testimony when they deliberate. Absent "some unusual circumstance," those requests should

be granted. *State v. Wolf,* 44 *N.J.* 176, 185, 207 *A.*2d 670 (1965). The requests are a clear sign that the evidence sought is important to the deliberative process. They also reflect the reality that jurors cannot be expected to have perfect recall of every bit of evidence introduced during a trial. As a result, the "true administration of justice" requires that judges typically accede to jury requests to review testimony. *Ibid.; see also State v. Wilkerson,* 60 *N.J.* 452, 460, 291 *A.*2d 8 (1972). Judges should not decline a request simply because it "would take time." *Wolf, supra,* 44 *N.J.* at 186, 207 *A.*2d 670.

Traditionally, court reporters read without inflection from their notes or transcripts to refresh the jury's memory. But in recent years, court reporters have become increasingly less common in the trial courts. The 1991 Supreme Court Committee on Court Reporting (Stenographic & Electronic) anticipated that outcome and recommended in its Final Report that each county "be equipped with a videotape courtroom to create the record." *Final Report,* at 47. The Committee further recommended that "[a]s official court reporters voluntarily leave state service, videotape should be extended to additional courts to make the record in matters that otherwise would have utilized an official court reporter." *Ibid.*

Today, according to the Administrative Office of the Courts, sixty-one courtrooms in use by Superior Court judges throughout the State are equipped for video recording, and 353 are outfitted for audio recording. By contrast, only sixty-two court reporters are available statewide. In the Essex Vicinage, where defendant's trial took place, forty-six courtrooms are outfitted for audio recording and three for video recording; only six court reporters are assigned there. Over time, even more courtrooms will use digital recording equipment to create the record.[3]

---

[3] New Jersey is not alone in its use of recording equipment. According to the Department of Justice, at least forty-five other states and the District of Columbia

Those developments present obvious practical difficulties when juries ask to review testimony. It is no longer possible to read back testimony promptly; trials would have to be delayed so that recorded testimony could be transcribed and then read aloud.

The trial in this case raised those very concerns. It was recorded by digital video, and no court reporter was present. When the jury asked for a read-back or playback of Pichaya's testimony, the court decided to play the full video rather than have the jury wait while a transcript was prepared. We find that the trial court properly exercised its discretion by permitting the playback.

In reaching that conclusion, certain basic principles underlie our analysis. We trust juries with the critically important task of determining facts and making credibility assessments to reach a fair verdict. To fulfill that responsibility, juries should be provided with the best available form of evidence, upon request, unless there is a sufficiently strong, countervailing reason not to proceed in that way. In the digital age, that means presumptively providing video playbacks in favor of read-backs, if the jury so requests.

To be sure, playing back recorded testimony reveals more than a sterile read-back does. A video playback enables jurors not only to recall specific testimony but also to assess a witness' credibility—which is precisely what jurors are asked to do.[4] *See Model Jury Charge (Criminal)*, "Criminal Final Charge—Credibility of Witness" (2003) (instructing jurors "to determine the credibility of the witnesses" and inviting consideration of "the appearance and demeanor of the witness" and "the manner in which he or she may

---

allow some form of audio recording to create the record, and at least twenty-four other states allow some form of video recording. *See* David B. Rottman & Shauna M. Strickland, Bureau of Justice Statistics, U.S. Dep't of Justice, *State Court Organization, 2004*, at 207–11 (2006).

[4] For that reason, a party might sometimes prefer having videotaped testimony to play back to a jury. Nothing in this opinion creates a right in any party to a particular form of medium for creating a record.

have testified," among other things). As the Committee on Court Reporting observed, "the playback is superior to an [official court reporter] readback." *Final Report, supra,* at 38. If jurors need their memories refreshed, they should have the benefit of that superior form of assistance.

### B.

In responding to a request to review testimony, the trial court's focus should be on the proper controls and limits needed to ensure a fair proceeding, not the medium used to create a record. Courts have broad discretion as to whether and how to conduct read-backs and playbacks. *See State v. Wilson,* 165 *N.J.* 657, 660, 762 *A.*2d 647 (2000); *Wilkerson, supra,* 60 *N.J.* at 460, 291 *A.*2d 8; *Wolf, supra,* 44 *N.J.* at 185, 207 *A.*2d 670. That "discretion is not unbridled," though. *Wilson,* 165 *N.J.* at 660, 762 *A.*2d 647.

Today, although video playbacks are increasingly commonplace, they still invite challenges like the one in this case. To help guide trial courts in exercising their discretion, and to minimize future claims, we now offer certain guidelines for the playback of video testimony. We draw heavily on prior case law in compiling the following principles because read-backs and playbacks present similar concerns.

(1) As noted before, judges should ordinarily grant a jury's request to play back testimony. *See Wilkerson, supra,* 60 *N.J.* at 460, 291 *A.*2d 8; *Wolf, supra,* 44 *N.J.* at 185, 207 *A.*2d 670. They should not decline a request simply because it "would take time." *Wolf, supra,* 44 *N.J.* at 186, 207 *A.*2d 670.

(2) As a general rule, after redacting sidebars and inadmissible testimony to which counsel objected, the entire testimony requested should be played back—including direct and cross examination—so that evidence may be considered in its proper context. *See Wilson, supra,* 165 *N.J.* at 660–61, 762 *A.*2d 647. Only then can a jury hear both direct proofs as well as inconsistencies and impeachment material. Trial judges nonetheless re-

tain discretionary authority to try to narrow a jury's request if it calls for the playback of extensive testimony.

(3) Courts should honor a jury's specific request to hear only limited parts of a witness' testimony—provided, once again, that playback includes relevant direct and cross examination. *Id.* at 661, 762 *A.*2d 647. Jurors should not be required to watch or hear more testimony than they ask for. *Ibid.* If necessary, the trial judge can clarify what testimony the jury wants repeated.

(4) Playbacks, like read-backs, should take place in open court with all parties present. *See Burr, supra,* 195 *N.J.* at 135, 948 *A.*2d 627; *State v. Michaels,* 264 *N.J.Super.* 579, 643–44, 625 *A.*2d 489 (App.Div.1993), *aff'd on other grounds,* 136 *N.J.* 299, 642 *A.*2d 1372 (1994). That practice avoids the selective replaying of only a portion of testimony.

(5) Judges should take precautions to prevent juries from placing undue emphasis on the particular testimony that is replayed. *See Michaels, supra,* 264 *N.J.Super.* at 644–45, 625 *A.*2d 489. To that end, at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back.

(6) Judges should make a precise record of what was played back to the jury. *See Wilson, supra,* 165 *N.J.* at 662, 762 *A.*2d 647.

(7) We add the following cautionary note. Because video evidence captures a more complete picture of a witness' testimony, trial judges must continue to exercise discretion to deny playing back all or part of the evidence requested when necessary to guard against unfair prejudice. For example, a judge should use care not to replay an outburst or bout of crying that would appeal to emotion. No bright-line rule can apply to the limitless situations that might arise; instead, they must be addressed on a case-by-case basis.

 The party opposing a playback has the burden to object and demonstrate prejudice. That party must offer specific reasons why the particular testimony would be unduly prejudicial if played back. Generalized arguments that the nature of video-taped testimony is prejudicial will not suffice. In evaluating an objection, trial judges should consider ways to ameliorate any prejudice, like editing out portions of the video testimony or playing the audio track without video if feasible.

## C.

The above approach is not inconsistent with the opinions in *Michaels* or *Burr*. In *Michaels*, child victims testified about sexual abuse via closed-circuit television. *Michaels, supra,* 264 *N.J.Super.* at 590, 642, 625 *A.*2d 489. Their testimony was the only part of the trial that was videotaped. During deliberations, the trial court granted the jury's request to watch the videotaped testimony, which was replayed in open court. *Id.* at 642, 625 *A.*2d 489. The judge rejected defendant's argument for a "less dramatic . . . reading . . . from a transcript." *Ibid.*

Defendant appealed. The Appellate Division noted the unique nature of videotaped testimony and "caution[ed] against routine replaying of such testimony," *id.* at 644, 625 *A.*2d 489, but it declined to "say that the replay of child-testimonial videotapes is prejudicial *per se* or that because of the impact of the visual image, the trial judge should be divested of discretion to accede to a jury's request for a replay." *Ibid.* Instead, the panel outlined certain steps to be taken before replaying videotaped testimony to guard against possible prejudice. *Id.* at 644–45, 625 *A.*2d 489.

Years later, this Court followed a similar approach in *Burr*. In that case, the defendant was charged with sexual assault and endangering the welfare of a child. *Burr, supra,* 195 *N.J.* at 122, 948 *A.*2d 627. Part of the evidence introduced at trial included a video of a victim's pretrial interview with the prosecutor's office, which was admitted under the "tender years" exception to the hearsay rule. *Id.* at 131, 948 *A.*2d 627. As in *Michaels*, no other

testimony was recorded. During deliberations, the trial judge granted the jury's request, over objection, to replay the videotape in the courtroom. *Id.* at 132, 948 *A.*2d 627.

On appeal, this Court expressed concern about "allowing a jury unfettered access to videotaped witness statements" and noted the danger "that the jury may unfairly emphasize" the recorded pretrial statement in the case over other testimony presented at trial. *Id.* at 134, 948 *A.*2d 627. The Court then adopted the procedures outlined in *Michaels* to guide future requests for the replay of videotaped pretrial interviews. *Ibid.* *Burr* did not foreclose the use of video playbacks; it set forth measures to help avoid prejudice in replaying video recorded pretrial statements.

Unlike in *Burr* and *Michaels,* the entire trial in this case was video recorded, not transcribed. As a result, the recorded testimony replayed for the jury was of the same type as all other trial testimony. Unlike the videotaped testimony of the children in *Michaels,* or the videotaped pretrial interview in *Burr,* Pichaya's testimony could not stand out or receive undue weight as the only recorded evidence in the case.

Today, we build on the precautionary measures outlined in *Burr* and *Michaels.* Those matters addressed the presence of different media within a single trial; we now proffer guidelines for courts that use video and digital recording equipment to create the entire record. Regardless, we continue to encourage similar precautionary steps to guard against undue prejudice. By authorizing the presumptive use of video playbacks, we also acknowledge and embrace advances in technology while addressing the practical concerns they raise.

### D.

Applying the above principles to this case, we find no error in the trial court's decision to replay Pichaya's testimony. The jury asked for a read-back or playback of that evidence. There was no ambiguity in the request that needed clarification. Because a read-back was impractical under the circumstances and

would have caused unnecessary delay, the trial court replayed Pichaya's entire testimony, including both direct and cross examination. The playback took place in open court with all parties present.

Defendant objected, but he voiced only generalized concerns about video playbacks. He did not claim any particular prejudice from a replay of Pichaya's testimony. Even now, before this Court, defendant has not identified any specific prejudice that he suffered.

 Although the trial judge did not give a specific instruction regarding the replayed testimony—as judges should do in the future—the jury charge he delivered the day before directed jurors to consider all of the evidence submitted. We presume that the jury faithfully followed that instruction, *see State v. Nelson,* 173 *N.J.* 417, 447, 803 *A.*2d 1 (2002) (citing *State v. Manley,* 54 *N.J.* 259, 271, 255 *A.*2d 193 (1969)), and do not require more in this case in light of the state of the law at the time of trial.

## IV.

 The trial court also instructed the jury that it should not consider in any way defendant's decision not to testify. The court based its instruction on the model jury charge in use at the time of trial. The jury heard the following instruction:

> As you know, ladies and gentlemen, the defendant did not testify in this case. The defendant elected not to testify at this trial. It is his constitutional right to remain silent. You may not consider for any purpose or in any manner in arriving at your verdict ... the fact that the defendant did not testify. That fact should not enter into your deliberations o[r] discussions in any manner or at any time. The defendant is entitled to have the jury consider all evidence presented at trial. He is presumed innocent *even if* he chooses not to testify.
>
> [Emphasis added.]

Defendant now argues that the use of the word "even" in the last sentence suggested that he had an obligation to testify.

 Because defendant did not object at trial, we review the charge for plain error and reverse only if such an error was "clearly capable of producing an unjust result." *R.* 2:10–2; *State*

*v. Walker,* 203 *N.J.* 73, 89–90, 999 *A.2d* 450 (2010). We also evaluate defendant's claim in light of "the totality of the entire charge, not in isolation." *State v. Chapland,* 187 *N.J.* 275, 289, 901 *A.2d* 351 (2006) (citing *State v. DiFrisco,* 137 *N.J.* 434, 491, 645 *A.2d* 734 (1994)).

We agree with the observations of the Appellate Division in addressing defendant's argument:

> We have no doubt that a jury hearing this clear description could not be confused by use of the word "even" and led to conclude that defendant had an obligation to testify. We recognize that the last sentence of the relevant Model Jury Instruction was revised after defendant's trial and that it now explains that the defendant "is presumed innocent whether or not [he] chooses to testify." *Model Jury Charge (Criminal),* "Defendant's Election Not to Testify" (revised May 4, 2009). Nonetheless, we are persuaded that the charge given in this case, read as a whole, had no capacity to lead the jurors astray. The jurors were clearly directed that they could not consider defendant's decision to leave the State to its proofs in any manner and were not permitted to allow the fact that he did not testify to enter into their deliberations or decision-making at any time.
>
> [*Miller, supra,* 411 *N.J.Super.* at 533, 988 *A.2d* 104.]

For similar reasons, we reject defendant's claim.

## V.

The trial court imposed consecutive fourteen-year terms of imprisonment for defendant's two first-degree robbery convictions. Defendant challenges both the length of the sentences and the court's decision to run them consecutively.

## A.

Appellate review of the length of a sentence is limited. An appellate court should "assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" *Bieniek, supra,* 200 *N.J.* at 608, 985 *A.2d* 1251 (quoting *State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.2d* 370 (1984)). A reviewing court should not "substitute its assessment of aggravating and mitigating factors" for the trial court's judgment. *Ibid.* (citing *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.2d* 1202 (1989)).

In this matter, the trial court explained its reasons for finding three aggravating and no mitigating factors, which are supported by competent credible evidence in the record. Moreover, the length of the sentence does not "shock the judicial conscience." *Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370. At issue is whether the consecutive sentences are warranted.

## B.

Under the Code of Criminal Justice, trial judges have discretion to decide if sentences should run concurrently or consecutively. *See N.J.S.A.* 2C:44–5(a) ("When multiple sentences of imprisonment are imposed on a defendant for more than one offense, ... such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence.").

To channel that discretion and promote consistency in sentencing, this Court outlined the following criteria for judges to consider in *Yarbough, supra,* 100 *N.J.* at 630, 643–44, 498 *A.*2d 1239:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

. . . .

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

... and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[*Id.* at 643–44, 498 *A.*2d 1239.]

The Court also specifically directed that "the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision." *Id.* at 643, 498 A.2d 1239; *see also R.* 3:21–4.

When a sentencing court properly evaluates the *Yarbough* factors in light of the record, the court's decision will not normally be disturbed on appeal. *See, e.g., Cassady, supra,* 198 *N.J.* at 182, 966 A.2d 473. However, if the court does not explain why consecutive sentences are warranted, a remand is ordinarily needed for the judge to place reasons on the record. *See, e.g., State v. Abdullah,* 184 *N.J.* 497, 514–15, 878 A.2d 746 (2005); *State v. Miller,* 108 *N.J.* 112, 122, 527 A.2d 1362 (1987).

In this case, the sentencing court mistakenly did not address the *Yarbough* factors. In a good faith attempt to follow recent decisions of this Court, the Appellate Division nevertheless determined that the sentencing court's findings "implicitly address two factors identified in *Yarbough* that militate in favor of consecutive sentences:" "no free crimes" and multiple victims. *Miller, supra,* 411 *N.J.Super.* at 535, 988 A.2d 104. Because the panel could "discern" the trial court's reasoning, it concluded there was no need to remand for resentencing. *Id.* at 536–37, 988 A.2d 104.

On the record before us, we are unable to agree. To begin with, as the Appellate Division correctly noted, the record also supported *Yarbough* factors that might favor concurrent sentences: whether the robberies had objectives that were "predominantly independent of each other," whether they involved one or separate threats of violence, and whether they were "committed so closely in time and place as to indicate a single period of aberrant behavior." *Id.* at 535–36, 988 A.2d 104. Beyond that, though, the principal problem is the record does not reveal that the trial court expressly or implicitly considered the guiding legal principles governing its discretion.

To be sure, sentences can be upheld where the sentencing transcript makes it possible to "readily deduce" the judge's rea-

soning. *Bieniek, supra,* 200 *N.J.* at 609, 985 *A.*2d 1251; *see also State v. Molina,* 168 *N.J.* 436, 442–43, 775 *A.*2d 509 (2001); *State v. Perry,* 124 *N.J.* 128, 177, 590 *A.*2d 624 (1991). But those cases are the exception, not the rule. We can safely "discern" the sentencing court's reasoning when the record is clear enough to avoid doubt as to the facts and principles the court considered and how it meant to apply them. To go further, however, may involve speculation about what the sentencing court meant.

In *Bieniek,* for example, the sentencing court did not explicitly address why it rejected five mitigating factors presented by the defense. *Bieniek, supra,* 200 *N.J.* at 607, 985 *A.*2d 1251. The court did, however, make detailed, relevant findings on the record. We found that that its "explanation at sentencing, read in its totality, clearly indicates that the court considered the arguments in favor of mitigating factors urged by the defendant and rejected the applicability of those factors." *Id.* at 611, 985 *A.*2d 1251. By comparison, the record in this case includes a thorough discussion of defendant's criminal history, the three aggravating factors found, and certain aspects of the crime committed. The transcript does not reflect a direct or indirect discussion of the basis for imposing consecutive sentences, though. In addition, the section set aside for a "statement of reasons" in the Judgment of Conviction is blank. Because we cannot sufficiently discern the trial court's reasoning, we remand for resentencing. We offer no view on the outcome of that hearing because the decision to impose consecutive or concurrent sentences rests in the first instance with the trial court.

Because the ability of appellate courts to discern a sentencing court's reasoning is often limited, we remind the parties present at sentencing of the importance of conducting a comprehensive *Yarbough* analysis whenever consecutive sentences are considered. Even experienced, capable sentencing judges who preside over a long list of cases in a crowded courtroom may make honest mistakes, as occurred here. If that happens, we encourage prosecutors and defense counsel, as officers of the court, to help protect

the record by reminding judges to consider and follow *Yarbough* before imposing consecutive or concurrent sentences.

## VI.

For the reasons set forth above, we affirm the judgment of the Appellate Division with regard to defendant's conviction and remand to the trial court for resentencing.

*For affirmance and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—7.

*Opposed*—None.

