NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4860-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ALSAMIR T. BROWN,

 Defendant-Appellant.

____________________________

 Submitted May 24, 2017 – Decided December 4, 2017

 Before Judges Fuentes, Simonelli and Gooden
 Brown.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Indictment No. 13-
 03-0592.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Richard Sparaco, Designated
 Counsel, on the brief).

 Carolyn A. Murray, Acting Essex County
 Prosecutor, attorney for respondent (Kayla E.
 Rowe, Special Deputy Attorney General/Acting
 Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.
 Following a four-day jury trial, defendant Alsamir Brown was

convicted of second-degree unlawful possession of a weapon,

namely, an assault firearm, N.J.S.A. 2C:39-5(f); fourth-degree

unlawful possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and

fourth-degree unlawful possession of a large capacity ammunition

magazine, N.J.S.A. 2C:39-3(j). He was sentenced to an aggregate

term of nine years with a four-and-one-half-year period of parole

ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

The charges stemmed from two police officers observing defendant

throw a machine gun into the trunk of a car before driving away.

In a subsequent motor vehicle stop, defendant opened the trunk,

revealing the gun in plain view.1

 On appeal, defendant raises the following contentions:

 POINT I – DEFENDANT WAS DENIED THE RIGHT TO A
 FAIR TRIAL BECAUSE OF THE OFFICERS' TESTIMONY
 THAT DEFENDANT "APPEARED" TO HAVE A MACHINE
 GUN IN HIS HAND, THEREBY GIVING THE JURY THE
 OFFICERS' LAY OPINIONS OR BELIEFS ON THE
 ULTIMATE ISSUE. (NOT RAISED BELOW).

 POINT II - DEFENDANT WAS DENIED THE RIGHT TO
 A FAIR TRIAL WHEN THE JURY HEARD BAD CHARACTER
 EVIDENCE, SPECIFICALLY DEFENDANT'S IMPLIED
 INCARCERATION PRIOR TO TRIAL.

 POINT III - THE SENTENCE OF NINE YEARS WAS
 EXCESSIVE.

1
 The trial court denied defendant's suppression motion on May 20,
2014.

 2 A-4860-14T2
After considering the arguments presented, in light of the record

and applicable law, we affirm.

 At trial, the State called Lieutenant Chris Gialanella and

Detective James Cosgrove, both longtime veterans of the Newark

Police Department. They testified that at about 9:15 p.m. on

August 21, 2012, they and Detective Richard Weber were patrolling

a crime-ridden residential area of Newark's south ward in an

unmarked police car. At one point, they observed an unoccupied

black sedan on Huntington Terrace. The sedan was parked

"haphazardly[,]" "almost in the middle of the street[,]" with its

trunk open, and its trunk light and tail lights illuminated. The

area was also "very well lit[,]" with street lights and porch

lights.

 Cosgrove was driving and Gialanella was seated in the front

passenger seat. From this vantage point, they observed a man,

later identified as defendant, exit "the driveway of an abandoned

building[]" carrying what appeared "to be a machine gun in his

hand." When he reached the black sedan, defendant tossed the

weapon into the trunk, closed the trunk, hurried into the front

driver's seat, and sped off.

 Gialanella described the weapon as "a machine gun" based on

his "training and experience[,]" having conducted hundreds of

investigations involving firearms. He testified the weapon had

 3 A-4860-14T2
"an extended magazine" to "hold the bullets[,]" which was "not

normal for a gun that size." Due to the extended magazine, the

firearm was readily apparent to him "sticking out from behind

[defendant's] [waist] area." Cosgrove, who had also conducted

"hundreds" of investigations involving firearms, described the

firearm as "a MAC-10 assault weapon" because of "the outline of

the weapon[.]" Cosgrove also observed "the extended magazine

sticking out behind [defendant] and the barrel facing the ground."

Prior to that night, Cosgrove had observed a MAC-10 "probably

[forty] or [fifty]" times.2

 After defendant pulled away, the officers conducted a motor

vehicle stop. Defendant exited his vehicle and, as he approached

the officers, blurted out "I was going fast, I have to take a

shit[.]" After Weber conducted a pat down of defendant with

negative results, he asked defendant to produce his driving

credentials. Instead, defendant reached into his vehicle and

"pressed the trunk release button[,]" opening the trunk of the

car. Gialanella, who by then was standing near the trunk of the

vehicle, "observed the same item that [he] saw in [defendant's]

hand previously . . . in the trunk in plain view." Gialanella

2
 Weber testified that from the rear passenger compartment of the
car where he was seated, his view was obstructed. As a result,
he did not observe defendant carrying a firearm or place it in the
trunk of the vehicle.

 4 A-4860-14T2
immediately alerted the other officers, and Weber placed defendant

under arrest without incident.

 Before turning the firearm over to the crime scene detective

who responded to the scene, Gialanella secured the firearm by

removing one live round from the chamber and seventeen live rounds

from the magazine. Subsequent examination of the firearm by the

crime scene detective confirmed that it was a "MAC-10" and that

"[t]he serial number was obliterated[,]" rendering it a defaced

firearm. See N.J.S.A. 2C:39-1(b). However, no trace or

fingerprint evidence was recovered from the weapon. A firearms

ballistics expert testified that the firearm was classified as a

"semi-automatic" "assault weapon" with "a high capacity

magazine[]" and "full metal jacket" ammunition. After testing,

he determined that the firearm "was operable[.]"

 The parties stipulated that defendant did not have a permit

to carry a firearm at any time. The parties also stipulated that

the following recorded telephone conversation occurred between

defendant and an unidentified person on March 8, 2014:3

 OPERATOR: You have a prepaid call from --

 [DEFENDANT]: Samir.

3
 The trial court granted in part and denied in part the State's
pre-trial motion to admit defendant's statements. The court's
ruling allowed the introduction into evidence of these excerpts
from defendant's March 8, 2014 conversation.

 5 A-4860-14T2
 OPERATOR: To accept this call press one. To
 refuse this call, hang up.

 [DEFENDANT]: What's going, little Bro?

 UNIDENTIFIED MALE VOICE: What's going is good.

 [DEFENDANT]: I go to court Monday and we'll
 see what they talk about but they sending my
 discovery to my strap.4 They ain't even got
 no fingerprints and nothing on my shit.

 UNIDENTIFIED MALE VOICE: They don't?

 [DEFENDANT]: I don’t know. It's just they
 don't got it. They said they put it in and
 that little chemical shit or whatever and it
 came back insufficient like. They ain't got
 no fingerprints on my shit. So I'm thinking
 about taking my shit all the way, fuck it.

 At the close of the State's case, the court denied defendant's

motion for a judgment of acquittal, Rule 3:18-1, and submitted the

case to the jury. Following the guilty verdict, defendant was

sentenced on June 1, 2015, to nine years of imprisonment with a

four-and-one-half-year period of parole ineligibility on the

unlawful possession of an assault firearm conviction, a concurrent

eighteen-month term with an eighteen-month period of parole

ineligibility on the unlawful possession of a defaced firearm

conviction, and a concurrent eighteen-month term on the unlawful

possession of a large capacity ammunition magazine conviction. A

4
 The parties stipulated that the term "strapped is frequently
used to refer to a firearm."

 6 A-4860-14T2
memorializing judgment of conviction was entered on June 16, 2015,

and this appeal followed.

 Defendant argues, for the first time on appeal, that the

testimony of Gialanella and Cosgrove "concerning their belief that

the defendant was carrying a machine gun" was impermissible lay

opinion that "was unfairly prejudicial . . . because it allowed

the jury to hear the police officers' opinions on the ultimate"

issue of defendant's guilt. According to defendant, "the trial

court had an independent duty" to instruct the jury "that they

were the sole arbiters of whether or not the defendant" possessed

"an assault firearm."

 Because defendant did not raise an objection before the trial

court, we review his argument under the "plain error" standard,

which mandates reversal only for errors "of such a nature as to

have been clearly capable of producing an unjust result[.]" R.

2:10-2; State v. Maloney, 216 N.J. 91, 104 (2013). The test is

whether the possibility of injustice is "sufficient to raise a

reasonable doubt as to whether the error led the jury to a result

it otherwise might not have reached." State v. Macon, 57 N.J.

325, 336 (1971).

 Lay opinion testimony is governed by N.J.R.E. 701, which

permits a lay witness' "testimony in the form of opinions or

inferences . . . if it (a) is rationally based on the perception

 7 A-4860-14T2
of the witness and (b) will assist in understanding the witness'

testimony or in determining a fact in issue." Thus, N.J.R.E. 701

imposes two important limitations on lay witness testimony. First,

the testimony must be based on the perceptions of the witness,

that is, "the acquisition of knowledge through use of one's sense

of touch, taste, sight, smell or hearing." State v. McLean, 205

N.J. 438, 457 (2011). The second limitation is that lay witness

testimony must "assist the trier of fact either by helping to

explain the witness's testimony or by shedding light on the

determination of a disputed factual issue." Id. at 458.

 A lay witness is not permitted to offer an opinion "on a

matter 'not within [the witness'] direct ken . . . and as to which

the jury is as competent as [the witness] to form a conclusion[.]'"

Id. at 459 (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super.

1, 8 (App. Div. 1955). The McLean Court stressed that lay

opinions may not "intrude on the province of the jury by offering,

in the guise of opinions, views on the meaning of facts that the

jury is fully able to sort out . . . [or] express a view on the

ultimate question of guilt or innocence." Id. at 461.

 Here, because the officers provided permissible lay opinion

testimony, there was no error, much less plain error. The

officers' testimony, based upon their observations of defendant

carrying a firearm, which they recognized from their training and

 8 A-4860-14T2
experience as a machine gun, did not exceed the bounds outlined

for lay opinion testimony in McLean, supra, and did not express a

view on the ultimate question of guilt or innocence. Rather,

their opinions explained their testimony, were based on their

perceptions, were within their "direct ken" and were on a matter

"as to which the jury" was not as competent to form a conclusion.

 Next, defendant argues that the court erred in admitting the

"portion of the recording" of the prepaid telephone call, which

clearly indicated that "defendant was incarcerated prior to

trial." According to defendant, admission of the call violated

N.J.R.E. 404(b) and N.J.R.E. 403 and denied defendant his "right

to a fair trial." We disagree. The court correctly determined

that the reference to the call being prepaid was not "indicative

of incarceration or that it's made from the jail" because "[t]here

are numerous ways to make prepaid calls." We accord a trial

judge's evidentiary ruling "substantial deference," State v.

Morton, 155 N.J. 383, 453 (1998), cert. denied, 532 U.S. 931, 121

S. Ct. 1380, 149 L. Ed. 2d 306 (2001), and will reverse only when

the trial judge's ruling was "so wide of the mark that a manifest

denial of justice resulted." State v. Carter, 91 N.J. 86, 106

(1982). Applying this standard, we see no abuse of discretion.

 Finally, defendant argues that his sentence was excessive

because, despite having "only one prior indictable conviction for

 9 A-4860-14T2
eluding police[,] . . . [t]he court found that [a]ggravating

[f]actors [three], [six] and [nine] applied[]" with "no mitigating

factors," and sentenced "defendant towards the upper end of the

[second-degree] range[.]" "Appellate review of the length of a

sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011).

We will

 affirm the sentence unless (1) the sentencing
 guidelines were violated; (2) the aggravating
 and mitigating factors found by the sentencing
 court were not based upon competent and
 credible evidence in the record; or (3) "the
 application of the guidelines to the facts of
 [the] case makes the sentence clearly
 unreasonable so as to shock the judicial
 conscience."

 [State v. Fuentes, 217 N.J. 57, 70 (2014)
 (alteration in original) (quoting State v.
 Roth, 95 N.J. 334, 364-65 (1984)).]

 Here, in finding aggravating factors three, six and nine,

N.J.S.A. 2C:44-1a(3), (6), and (9), the court noted that defendant

was "[twenty-six] years of age," a "high school" graduate, and

"unmarried with one child." The court pointed out that defendant

had "eight prior arrests and one prior indictable conviction in

May of 2009 for eluding[,]" for which he received a prison

sentence. Defendant also had two cases pending trial, a drug

possession case and an aggravated assault case. The court found

no mitigating factors and, in the absence of any mitigating

factors, concluded "that the aggravating factors preponderate[d]."

 10 A-4860-14T2
 The sentence was two years above the mid-range, accounting

for the substantial and significant weight given the applicable

aggravating factors and reflecting the absence of any mitigating

factors. See Fuentes, supra, 217 N.J. at 73 ("[R]eason suggests

that when the mitigating factors preponderate, sentences will tend

toward the lower end of the range, and when the aggravating factors

preponderate, sentences will tend toward the higher end of the

range.") (quoting State v. Natale, 184 N.J. 458, 488 (2005)).

 We do not "'substitute [our] assessment of aggravating and

mitigating factors' for the trial court's judgment." Miller,

supra, 205 N.J. at 127 (quoting State v. Bieniek, 200 N.J. 601,

608 (2010)). We acknowledge, however, that one prior indictable

conviction may not support a finding of aggravating factor six.

Nevertheless, despite this error, we conclude the factual findings

by the judge sufficiently support the sentence imposed, obviating

the need for a remand. We are satisfied that the excision of

aggravating factor six would not alter the term.

 Affirmed.

 11 A-4860-14T2