# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

`

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0841-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

C.S.,[1]

    Defendant-Appellant.

_____

> Submitted December 17, 2024 – Decided January 21, 2025
>
> Before Judges Smith and Chase.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-08-0887.
>
> Jennifer Nicole Silletti, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim. R.1:38-3(d)(10).

Following a jury trial, defendant was convicted of first-degree aggravated sexual assault of a victim under thirteen years old, N.J.S.A. 2C:14-2(a)(1), and related offenses. The trial court imposed an aggregate sentence of thirty-years imprisonment subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, Megan's Law, N.J.S.A. 2C:7-1 to -23 and parole supervision for life, N.J.S.A. 2C:43-6.4.

Defendant appeals and raises the following contentions:

> POINT I: [DEFENDANT] WAS DENIED A FAIR TRIAL WHEN THE JURY HEARD THE INTERROGATING DETECTIVE REPEATEDLY STATE THAT [DEFENDANT] WAS LYING AND THAT HIS DENIALS WERE INCONSISTENT WITH OTHER PEOPLE'S STATEMENTS.
>
> POINT II: REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ERRONEOUSLY REPLAYED ONLY THE PORTION OF THE INTERROGATION VIDEO IN WHICH [DEFENDANT] CONFESSED AND FAILED TO INSTRUCT THE JURY NOT TO GIVE UNDUE WEIGHT TO THE REPLAYED PORTION OF THE INTERROGATION.
>
> POINT III: THE CUMULATIVE EFFECT OF THE ERRORS REQUIRES REVERSAL.
>
> POINT IV: RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT IMPROPERLY RELIED ON [DEFENDANT'S] DENIAL OF GUILT IN FINDING AGGRAVATING FACTOR THREE.

We are unpersuaded and affirm the convictions and sentence.

2

# I.

In June 2019, N.N.'s mother noticed a hickey on N.N.'s neck. N.N. was twelve years old at that time. N.N. told her mother that a boyfriend had given her the hickey. When her mother asked, N.N. denied that she was sexually active. The mother told N.N. that she was "going to take her to the hospital to -- for them to examine her to see if she was a virgin."

While in the hospital waiting room, the mother told N.N. to speak to her older sister on the phone; during that phone call N.N. told her sister that she had not had sex with her boyfriend, but defendant, her cousin, made her have sex with him. N.N. had not previously told anyone about the sexual assault because she did not want her family to think that she was lying, or that she was doing this out of spite. Additionally, N.N. stated that she did not want to ruin her family.

The mother and N.N. then went to the Union City police station to file a report. The next day, the Department of Youth and Family Services interviewed the mother, N.N., her stepfather, her brother, and her sister. The interviews were conducted separately. On that same day, Detective Kevin O'Reilly ("O'Reilly"), from the Hudson County Prosecutor's Office, Special Victims Unit ("SVU"), interviewed N.N. and her mother separately.

3

A few days later, several detectives from the SVU, including O'Reilly, went to defendant's residence and asked to speak with him, to which defendant agreed. Defendant drove with the officers to the police station. Upon their arrival at the station defendant was brought to an interview room, where O'Reilly read him his Miranda[2] rights, to which defendant stated he understood his rights, then signed and initialed the Miranda rights form.

Defendant was questioned for approximately ninety minutes, which was recorded on video. Defendant initially denied that he had been alone in bed with N.N. or that he had sexually assaulted her, despite O'Reilly's repeated statements that he knew defendant was lying because his story was inconsistent with what other people had said. At one point O'Reilly told defendant "[y]ou're bull*****ing me right now because I know that something happened . . . ," to which defendant replied, "I never touched that girl." After an hour of interrogation, defendant stated that he touched N.N.'s breasts and penetrated her vagina from behind on one occasion. Defendant was then arrested.

A grand jury charged defendant with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and third-degree endangering the welfare of a

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

child, N.J.S.A. 2C:24-4(a)(1) (count three). The State alleged N.N. was approximately ten years old, and defendant was twenty years old when these acts occurred.

Defendant's three-day jury trial began in November 2021. On the first day of trial, N.N.'s mother testified. On day two, Detective Steve Molina, the detective who took the initial report with N.N., and her mother testified. N.N., O'Reilly, defendant's brother, J.S., and defendant also testified.

N.N. testified that defendant sexually assaulted her on multiple occasions when she visited her father at a residence in Union City where defendant, her father, and other family members were living. N.N. stated she did not remember how old she was the first time she was assaulted and estimated that it was a couple of years before she told her sister during the phone call at the hospital. N.N. testified her first memory of being assaulted was during a family party, which took place in defendant's shared bedroom, after defendant told his brother J.S. and N.N.'s brother to leave the brothers' bedroom. N.N. testified that all the assaults occurred when they were alone in defendant's shared bedroom.

O'Reilly gave testimony regarding his duties as a member of the SVU, how he encountered defendant, and how defendant agreed to go back to the unit so they could speak to him regarding allegations made by N.N. O'Reilly testified

that he did not promise defendant anything or make any threats to get defendant to speak with him, nor was he aware of anyone else threatening or promising defendant anything to get him to speak to them. Soon after, the State asked the court permission to play the video of defendant's interrogation, to which defense counsel did not object.

Next, defendant's younger brother, J.S., testified for the defense. J.S testified that he was around thirteen at the time of the allegations. J.S. recalled that he would play video games with defendant, N.N., and N.N.'s brother when N.N. would visit her father on the weekends. J.S. stated that there were no occasions when defendant and N.N. were left alone in the bedroom, and that his brother never asked him to leave the bedroom when they were playing video games with their cousins. J.S. testified that he did not notice any change in the relationship between defendant and N.N. from 2016 to 2018.

Defendant then testified that he falsely confessed to O'Reilly because he had a friend who was in the hospital and wanted to get out of the interrogation as quickly as possible. Defendant stated it was his belief that his aunt, N.N.'s mother, fabricated the allegations because she was mad at his side of the family. Defendant testified he thought that the police would investigate, discover he had

A-0841-22

not done anything, and let him go home. Defendant was cross-examined by the prosecutor. The defense then rested its case.

After closing arguments were made, the judge read the jury charges. The judge began by providing the jurors with the standard instructions. Particularly important to this case, the judge gave the following instruction regarding the video statement given by defendant:

> It is your function to determine whether or not that statement was actually made by the defendant, and if made, whether the statement or any portion of it is credible. You should, therefore, receive, weigh, and consider such evidence with caution.
>
> If, after consideration of all these factors, you determine that the statement was not actually made or that the statement is not credible, then you must disregard the statement completely.
>
> If you find the statement was made and that part or all of the statement is credible, you may give what weight you think appropriate to the portion of the statement you find to be truthful and credible.

The judge gave the "false in one, false in all" instruction and concluded the remaining instructions.

During deliberations, the jury posed three questions to the court. The first two questions asked for "clarification on what constitutes the level of reasonable doubt" and "is not believing a victim reasonable doubt?" In response, the trial

court re-read the jury charges on reasonable doubt and the "false in one, false in all" charge. For the third question, the jury asked that "the last clip of the video leading up to the confession" be replayed. The jurors clarified that they wanted to see "the second clip from beginning to end." Without objection from either party, or a limiting instruction, the trial court replayed only the requested portion of the interrogation video. The jury reached a verdict thirty minutes after the replay, the jury rendered a verdict, convicting defendant of first-degree aggravated assault and second-degree assault.

In May 2022, the trial court sentenced defendant to a thirty-year prison term subject to NERA on count one and a concurrent six-year prison term subject to NERA on count two. Defendant was also sentenced to Megan's Law and parole supervision for life.

During sentencing, the judge found aggravating factors: three, risk of reoffending, based on the Avenel report, and the fact that defendant had not taken responsibility; and nine, the need for deterrence, stating "there is certainly a strong need to deter you," adding "you need to be deterred from committing these types of crimes." As to mitigating factors, the judge found factor seven, because defendant had no prior criminal history, however, the judge refused to find factor eight—circumstances unlikely to recur—stating, "I don't find facts

for that. If you're in the presence of children or anybody else again, you could do this and that would be completely in opposite to aggravating factor number three because there is a risk." The trial court later clarified that only the sentence on count one was subject to NERA and issued an amended judgment of conviction.

## II.

Defendant first contends that he was denied a fair trial because the jury heard the interrogating detective repeatedly question defendant's veracity. Although defendant concedes he failed to object to the video at trial, he posits that the statements would have been inadmissible if made by the detectives while testifying.

In support of his argument defendant cites to State v. C.W.H., 465 N.J. Super. 574 (App. Div. 2021), where the court found the jury's ability to determine credibility was "impermissibly tainted," because the "numerous accusations" the interrogating detective made that defendant was not being honest, "clearly conveyed the impression to the jury that defendant was being deceptive." Id. at 595. Additionally, defendant cites to State v. Sui Kam Tung, 460 N.J. Super. 75 (App. Div. 2019), where the court held an officer's opinion evidence was inadmissible, because during the interrogation the officer stated

they knew defendant was lying, and then that officer testified in live court to the same, the court found this undermined the jury's ability to determine credibility on its own. Id. at 102-03.

An evidential error that defendant did not object to at trial is reviewed for plain error. State v. Trinidad, 241 N.J. 425, 445 (2020). That standard requires reversal only if the testimony was "clearly capable of producing an unjust result." R. 2:10-2. The "possibility of an injustice" must be "'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" Trinidad, 241 N.J. at 445 (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Plain error "is a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (citations omitted) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting Macon, 57 N.J. at 336). "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "In the context of a jury trial, the possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.E.P., 243 N.J. 362, 389-90 (2020) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

"The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" Santamaria, 236 N.J. at 404 (quoting State v. Bueso, 225 N.J. 193, 203 (2016)). In deciding whether an error amounts to plain error, it "must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468, (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)). When there is no objection, we must assume "defense counsel did not believe the remarks were prejudicial." State v. Pressley, 232 N.J. 587, 594 (2018) (internal quotations and citations omitted).

Interrogation techniques used by an officer "to dissipate [a suspect's] reluctance and persuade the person to talk are proper as long as the will of the suspect is not overborne." State v. Miller, 76 N.J. 392, 403 (1978); State v. Galloway, 133 N.J. 631, 655 (1993) (holding an officer lying to a suspect is not on its own "render a confession involuntary"); and State v. Patton, 362 N.J. Super. 16, 31 (App. Div. 2003) (noting our courts "have permitted the use of trickery in interrogations."). However, the issue is not whether the detective's interrogation techniques were proper, but whether those portions of the interrogation during which they accuse defendant of lying should have been redacted.

Here, the detective's statements were not made for the purpose of expressing an opinion as to defendant's credibility or veracity at trial. Rather, they were questions in a pre-trial interview, part of an interrogation technique and designed to elicit a response from a suspect. As such, the comments were offered for their effect on defendant and not for their truthfulness. The detective did not testify as to defendant's truthfulness. The detective's comments were admissible since they provided context for the interrogation enabling the jury to assess the reasonableness of the defendant's responses. We would note that if defendant had requested a limiting instruction, one would have been appropriate.

Additionally, defendant was not denied a fair trial, as the trial court gave extensive instructions to the jury regarding their role. The judge went over what constitutes reasonable doubt, and that the State had the burden to prove each element of their case beyond a reasonable doubt, to which the burden never shifts to the defendant. Second, the judge instructed the jurors on how they may consider the evidence that was presented. Specifically, as to defendant's video recorded statement, the judge stated the following:

> It is your function to determine whether or not that statement was actually made by the defendant, and if made, whether the statement or any portion of it is credible. You should, therefore, receive, weigh, and consider such evidence with caution.

12

> If, after consideration of all these factors, you determine that the statement was not actually made or that the statement is not credible, then you must disregard the statement completely.
>
> If you find the statement was made and that part or all of the statement is credible, you may give what weight you think appropriate to the portion of the statement you find to be truthful and credible.

This instruction was repeated soon after it was originally stated. Further, in response to the jury's three inquiries during deliberation, defense counsel requested the "false in one false in all" instruction be reread, which the judge did soon after the request was made.

Moreover, defendant's reliance on C.W.H., and Tung, is misguided. In each of those cases, live testimony supplemented the audio introduced at trial. For example, in C.W.H., after the video interrogation was played for the jury, the detective who had conducted the interrogation provided live testimony evaluating and assessing the recorded statement. C.W.H., 465 N.J. Super. at 588. The detective testified that he and the other interrogating officer did most of the talking on the recording because the defendant's denials were "some of the weakest denials I've seen in an interview," further elaborating "[h]is denials were extremely weak, things like I can't remember, I don't know. To me, when I hear I don't know it means that he does know, he just isn't ready to admit it.

It's one step closer to providing the truth." Id. at 592. Soon after, and prior to the detective completing his response, the judge gave a curative instruction to the jury, sua sponte. C.W.H., 465 N.J. Super. at 592. However, after the limiting instruction the detective again repeated his opinion that the defendant was lying, which this Court found tainted the jury's evaluation of credibility and was "clearly capable of producing an unjust result." Id. at 596 (quoting R. 2:10-2).

Here, although O'Reilly did testify, he did not testify to the veracity of the defendant. O'Reilly provided some background information about himself, and his position in the SVU. O'Reilly further testified how he got in contact with defendant, that defendant agreed to go with the officer to the station for an interview, and that he Mirandized defendant at the onset of the interview. Additionally, O'Reilly stated that he made no promises or threats in order to get defendant to speak with him. Soon after, the State asked the court permission to play the video, which defense counsel did not object to.

Although the judge did not give the limiting instruction to the jurors regarding the officer's statements, the jury charge was extensive. Particularly important to this case, the court gave specific instruction regarding the statement made in the interrogation video, which was read to the jury on two occasions. Furthermore, there is nothing in the record that suggests the jury relied on the

A-0841-22

detectives' comments or that the redaction of same would have changed the outcome of the trial. Therefore, allowing the video to be played with the officer's statements was not "clearly capable of producing an unjust result." R. 2:10-2.

## III.

Defendant next argues that his rights to due process and a fair trial were violated because the jury was permitted to hear a portion of the video during the playback which "allowed the jury to inordinately rely on the confession" while they made their decision as to credibility. Defendant asserts replaying only a portion of the interrogation video "was clearly capable of producing an unjust result." R. 2:10-2. Additionally, defendant argues the failure of the trial court to give the jury a limiting instruction worsened the risk that jurors would "prejudicially overemphasize" the confession.

A court's decision to replay a recording of trial testimony for deliberating jurors is vested in the discretion of the trial judge. State v. A.R., 213 N.J. 542, 559 (2013). "Absent 'some unusual circumstance,' those requests should be granted." State v. Miller, 205 N.J. 109, 119-20 (2011) (referring to the playback of trial testimony) (quoting State v. Wolf, 44 N.J. 176, 185 (1965)).

15

In <u>Miller</u>, 205 N.J. at 122, the Court provided guidelines for ruling on a jury's request to replay testimony. In doing so, the Court emphasized that "judges should ordinarily grant a jury's request to play back testimony." <u>Ibid.</u> (citing <u>State v. Wilkerson</u>, 60 N.J. 452, 460 (1972)). The Court's guidelines emphasized replaying recorded evidence in a manner that accurately responds to the jury's request, although it also noted that trial courts "retain discretionary authority to try to narrow a jury's request" if too "extensive." <u>Id.</u> at 122-23.

Here, the court did not abuse its discretion in allowing the jurors to watch the playback of the last thirty minutes of the interrogation video. No objection or request for the entire video to be played was made by defense counsel. Additionally, not long before the playback was shown, the court again provided the "false in one, false in all" instruction. Moreover, in accordance with the recommendation in <u>Miller</u>, the playback took place in open court with all of the parties present. <u>See</u> <u>Miller</u>, 205 N.J. at 123.

Further, unlike in <u>Miller</u> where the court found it sufficient that the jury charge was given the day before, here, the jury charge was given the same day the playback was requested and watched. <u>See</u> <u>Miller</u>, 205 N.J. at 126. Additionally, the "false in one, false in all" instruction was stated multiple times, which made clear to the jury it was in their discretion to determine credibility

and give weight to the testimony. As the <u>Miller</u> court stated "[w]e presume that the jury faithfully followed that instruction." <u>Ibid.</u> As such, the court did not abuse its discretion in granting the jury's request to playback the last thirty minutes of the interrogation video.

IV.

The cumulative error doctrine recognizes "that even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." <u>State v. Jenewicz</u>, 193 N.J. 440, 473 (2008) (citing <u>State v. Kosovich</u>, 168 N.J. 448, 540 (2001)). Nevertheless, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." <u>State v. Weaver</u>, 219 N.J. 131, 155 (2014). Here, defendant's argument that the cumulative effect of the interrogation video being shown without a limiting instruction, and the fact that his confession was shown twice, falls short. The court instructed the jurors that it was their duty to determine the credibility of the witnesses. Additionally, the playback request was made by the jury, not objected to by defense counsel, and shown in open court with all parties present.

V.

Defendant also asserts the court's finding of aggravating factor three, the "risk that defendant will commit another offense[.]", N.J.S.A. 2C:44-1(a)(3), was improper. Defendant further asserts the court violated his right against self-incrimination by concluding that his lack of remorse, and denial of guilt during his Avenel evaluation meant he had not taken responsibility.

In reviewing a sentencing determination, we employ an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We may not substitute our judgment regarding an appropriate sentence for that of the trial court. State v. Case, 220 N.J. 49, 65 (2014); State v. Lawless, 214 N.J. 594, 606 (2013). The test to be applied is "whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." State v. Ghertler, 114 N.J. 383, 388 (1989). Thus, a sentence should be affirmed unless a reviewing court determines that (1) the sentence violated legislative policies, (2) the aggravating or mitigating factors were not supported by credible evidence, or (3) the sentence, although imposed in accordance with the sentencing guidelines, is "clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984); see also State v.

O'Donnell, 117 N.J. 210, 215-16 (1989) (outlining principles of appellate review of sentencing decisions).

Defendant's lack of remorse was not the sole justification for the judge's application of aggravating factor three, and we find no violation of his Fifth Amendment rights. See State v. Marks, 201 N.J. Super. 514, 540 ("[T]he trial judge's brief allusion to defendant's failure to candidly admit his guilt does not require a reversal."). The judge explained that he incorporated the findings in the Avenel evaluation—that defendant presented a mild risk of reoffending— and the fact that defendant did not take responsibility to lead to his conclusion that there was a risk defendant would commit another crime. As our Supreme Court has stated "[a] finding of aggravating factor three may be supported by evidence in the record showing defendant has a lack of remorse." State v. Rivera, 249 N.J. 285, 302 (2021). Additionally, in his explanation for not finding mitigating factor eight-circumstances unlikely to reoccur, the judge stated "I don't find facts for that. If you're in the presence of children or anybody else again, you could do this and that would be completely in opposite to aggravating factor number three because there is a risk. So I can't find number eight." Thus, there was credible evidence on the record to support a finding of aggravating factor three and the court did not abuse its discretion.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0841-22