**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3706-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN N. MAHONEY,

    Defendant-Appellant.

_____

Submitted May 8, 2018 — Decided July 19, 2018

Before Judges Reisner, Hoffman and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 08-06-0996.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant John N. Mahoney appeals from a March 15, 2016 judgment of conviction, after a jury found defendant guilty of

aggravated manslaughter, N.J.S.A. 2C:11-4(a), possession of weapons for unlawful purposes, N.J.S.A. 2C:39-4(a), and hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4). At sentencing, the trial judge imposed the following prison terms: twenty-years, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, for aggravated manslaughter; a concurrent five years with three-years parole ineligibility for possession of a weapon; and a consecutive four years for hindering.

Defendant presents the following arguments for our review:

### POINT ONE

THE TRIAL COURT'S REPEATED ADMISSION OF OTHER CRIMES EVIDENCE WITHOUT CONDUCTING A HEARING PURSUANT TO N.J.R.E. 104 AND WITHOUT THE NECESSARY LIMITING INSTRUCTION DENIED DEFENDANT A FAIR TRIAL.

### POINT TWO

THE JURY INSTRUCTION ON SELF-DEFENSE WAS PLAINLY ERRONEOUS AS IT LIMITED THE DEFENSE TO THE MURDER AND WEAPONS OFFENSES AND BECAUSE IT WRONGFULLY INSTRUCTED ON THE DUTY TO RETREAT. (PARTIALLY RAISED BELOW)

### POINT THREE

EVIDENCE OF STATEMENTS FROM NON-WITNESSES WAS IMPROPERLY ADMITTED.

<u>POINT FOUR</u>

DEFENDANT WAS PREJUDICED BY THE ADMISSION OF
TESTIMONY BY THE STATE'S EXPERT WHICH WAS NOT
CONTAINED IN HIS REPORT.

<u>POINT FIVE</u>

THE PROSECUTOR'S SUMMATION IMPROPERLY
DENIGRATED THE DEFENSE EXPERT. (Not Raised
Below)

<u>POINT SIX</u>

DEFENDANT'S TWENTY YEAR NO EARLY RELEASE
SENTENCE WITH A CONSECUTIVE FOUR YEAR TERM FOR
HINDERING CONSTITUTED AN EXCESSIVE SENTENCE.

We affirm defendant's conviction and sentence on the aggravated manslaughter and hindering counts, but remand for the trial court to vacate the sentence imposed on the unlawful possession of a weapon count, which the court merged. We first generally describe the facts surrounding the crimes, then address each of defendant's specific arguments, and their attendant facts, in turn.

I

On the morning of December 27, 2007, defendant called police and reported that an intruder shot him and his father in their home. When police arrived, they found defendant's father lying dead in a reclining chair in the living room, with his feet up and a blanket over him, and three gunshot wounds to the right side of

his head.  While defendant sustained a gun-shot wound in the left arm, police observed a "muzzle-burn" on his skin.

After receiving medical treatment at a nearby hospital, defendant spoke to police, who described him as calm and relaxed. Notably, defendant never asked about his father.

Police took defendant back to the police station to take a recorded statement.  Defendant told police he went to dinner with a friend the previous evening, then played computer games and instant messaged another friend until about 7:00 a.m.  At approximately 7:30 a.m., defendant heard gunshots, ran into the living room, struggled with the intruder, who shot him in the arm, then disarmed the intruder and fired at him as the intruder fled out the back door.

While taking defendant's statement, the police learned of conflicting crime scene evidence and that defendant's gunshot wound appeared self-inflicted.  They immediately read him his Miranda[1] rights and began interrogating him.  Defendant adhered to his story for more than three hours and told officers he and his father had a good relationship and his father never abused him. He denied accidentally shooting his father, as police suggested. Eventually, defendant admitted to having some problems with his

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

father over football and school. He stated he had been thinking about killing his father for some time, but had abandoned the idea.

As the interrogation continued, defendant told police he had gone into the kitchen while his father slept, picked up a gun he knew was loaded, and without realizing the safety was off, pulled the trigger, causing the gun to discharge into the hallway. His father woke up and defendant pointed the gun at him and shot him for "no reason." Then defendant said he shot his father because he yelled and it startled him. Defendant claimed he fired so quickly his father had no time to move after he opened his eyes and yelled out. Thereafter, he shot himself in an effort to cover up what he had done.

Defendant then told police his father abused him and it was more than he "could live with." He claimed his father "went beserk" after the gun went off, and he thought, "I've got to get rid of him." The police arrested defendant and charged him with murder. After indictment and trial, the jury found him guilty of the lesser-included offense of aggravated manslaughter, along with illegal possession of a weapon and hindering.

## II

Defendant first contends he did not receive a fair trial because the trial court erred by allowing the State to admit prior

bad acts evidence on multiple occasions, without holding a hearing or providing the jury with a limiting instruction. We disagree.

"Appellate courts generally defer to trial court rulings on the admissibility of evidence of other crimes, unless those rulings constitute an abuse of discretion." State v. Erazo, 126 N.J. 112, 131 (1991) (citation omitted). Where there has been no objection to the admission of inadmissible hearsay testimony, an appellate court must consider whether the error was "clearly capable of producing an unjust result." R. 2:10-2; State v. Branch, 182 N.J. 338, 353 (2005).

Pursuant to N.J.R.E. 404(b), "[e]xcept as otherwise provided by [N.J.R.E.] 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." However, "[s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is 'a "bad" person in general.'" State v. Cofield, 127 N.J. 328, 336 (1992) (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)).

A-3706-15T3

A four-prong test guides the admissibility of evidence of other crimes or wrongs:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Id. at 338 (citation omitted).]

Here, the trial court allowed testimony regarding several prior bad acts including testimony about defendant being lazy, going to a strip club, soliciting the housekeeper and his father's girlfriend for sex, selling alcohol in high school, and breaking into an ATM. The court also permitted the State to cross-examine defendant regarding a statement that he kept a short list of people he knew that he was not planning to murder. Finally, the court allowed a conversation between defendant and a friend, who was accused of theft, in which defendant told the friend he should plan ahead when committing theft so as not to get caught.

Defense counsel objected to some of that testimony, but not all. The State argued the testimony was admissible to rebut the claim that defendant was afraid of his father, that he did not have the characteristics of a battered child, that he was

financially-motivated to murder his father, or his willingness to devise a plan. In many of the objections, the court considered the relevancy, the probative versus prejudicial impact, and when the bad acts occurred. Defense counsel did not request any limiting instructions.

We find the testimony regarding selling alcohol at school and planning to break into an ATM admissible under N.J.R.E. 404(b) as proof that defendant had a financial motive to kill his father. The testimony regarding the list of people and the conversation with the friend concerning how to plan a theft are also admissible under N.J.R.E. 404(b) as proof that defendant was planning his father's murder.

The State contends it offered the testimony regarding defendant's laziness, going to a strip club, and solicitation of sex to rebut defendant's argument that he was afraid of his father. Although rebuttal of self-defense evidence is not explicitly listed in N.J.R.E. 404(b), the statute uses the language "such as," indicating evidence can be admitted for purposes other than those listed "when such matters are relevant to a material issue in dispute." Here, defendant argues he killed his father in self-defense because he was afraid of him. Therefore, the State is entitled to admit evidence of specific acts showing defendant was not afraid of his father.

8

Consideration of the Cofield factors supports admissibility as well. All of the acts are relevant to material issues, as previously noted. The evidence is clear and convincing as there are documented conversations and credible witnesses. All of the acts occurred not long before the killing; however, the acts are not particularly similar to the crime committed. Although the testimony likely had some prejudicial effect, the trial court did not clearly abuse its discretion in allowing the testimony.

Furthermore, defendant received a rather favorable verdict considering defendant shot his father while he sat in a recliner with a blanket around him, strongly suggesting any error did not produce an unjust result. Accordingly, we conclude the trial court did not abuse its discretion in admitting the evidence to rebut various aspects of the defense, and any error was harmless.

### III

Defendant next contends the trial court committed plain error in its charge on self-defense. Specifically, defendant argues the jury charge should have explicitly stated self-defense was available for both murder and all lesser-included offenses. We disagree that these circumstances required such explicit instruction.

When a defendant fails to object to a jury charge, we review for plain error, and "disregard any alleged error 'unless it is

of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

In reviewing any claim of error relating to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005) (citing State v. Jordan, 147 N.J. 409, 422 (1997)). In addition, "[t]he error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Furthermore, counsel's failure to object to jury instructions "gives rise to a presumption that he did not view [the charge] as prejudicial to his client's case." State v. McGraw, 129 N.J. 68, 80 (1992).

Our Supreme Court "held that a person who acts in self-defense and 'kills in the honest and reasonable belief that the protection

of his [or her] own life requires the use of deadly force' cannot be convicted of murder, aggravated manslaughter, or manslaughter." State v. O'Neil, 219 N.J. 598, 601 (2014) (quoting State v. Rodriguez, 195 N.J. 165, 172 (2008)). "Where the evidence could support self-defense as the justification for a homicide, the trial court must tell the jury that self-defense is a complete defense to aggravated and reckless manslaughter as well as to murder." State v. Gentry, 439 N.J. Super. 57, 67 (App. Div. 2015) (citing Rodriguez, 195 N.J. at 174-75).

Here, defense counsel did not formally object to the jury instructions; however, he did raise a concern during a preliminary charge conference that the jury may not understand that self-defense applies to all charges except hindering. The trial court generally advised the jury that it had to acquit defendant if it found he acted in self-defense. Additionally, defense counsel made it clear in his summation that self-defense applied equally to the lesser-included offenses to murder. Furthermore, defendant did not have a viable self-defense claim as his father was unarmed and sitting in a recliner with a blanket tucked around him; therefore, Rodriguez did not require the trial court to inform the jury explicitly that self-defense applies to manslaughter as well as murder. Accordingly, we find no error in the jury instructions regarding self-defense.

A-3706-15T3

Defendant also argues the trial court erroneously instructed the jury on the requirement to retreat. Specifically, defendant claims the court incorrectly instructed the jury that defendant had a duty to retreat in his own home. We disagree.

According to N.J.S.A. 2C:3-4(b)(2), "[t]he use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself [or herself] against death or serious bodily harm . . . ." Furthermore, the use of deadly force is not justifiable if "[t]he actor knows that he [or she] can avoid the necessity of using such force with complete safety by retreating," except "[t]he actor is not obliged to retreat from his [or her] dwelling, unless he [or she] was the initial aggressor . . . ." N.J.S.A. 2C:3-4(b)(2)(b)(i).

Here, the court omitted from its charge the exception to the duty to retreat that defendant was "not obliged to retreat from his dwelling." Defense counsel failed to object. We find no plain error because defendant was the aggressor here, and therefore, had a duty to retreat even though he was in his own home. See N.J.S.A. 2C:3-4(b)(2)(b)(i). Again, defendant's father was unarmed and sitting in a recliner with a blanket around him at the time of the shooting, indicating he was not the aggressor. There was no threat of death or serious bodily injury at that moment, and therefore no need for defendant to protect himself

12

with deadly force. Accordingly, we reject defendant's argument that the trial court committed plain error in its jury charge regarding the duty to retreat.

IV

Defendant contends the trial court committed reversible error in admitting testimony from the investigator that he spoke to several unnamed persons during the investigation, all of whom told him they had no knowledge of defendant's father abusing him. Again, we disagree.

Our standard of review on evidentiary rulings is abuse of discretion. State v. Weaver, 219 N.J. 131, 149 (2014). We only reverse those "rulings that undermine confidence in the validity of the conviction or misapply the law . . . ." Ibid. Consequently, we do "not substitute [our] own judgment for that of the trial court, unless 'the trial court's ruling is so wide of the mark that a manifest denial of justice resulted.'" State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

First, defendant argues the investigator's testimony was inadmissible hearsay. N.J.R.E. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "[W]here statements are offered, not for

the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not deemed inadmissible hearsay." Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007) (citation omitted). However, when the court admits such evidence, it should provide the jury with a limiting instruction regarding the proper use of the evidence. State v. Maristany, 133 N.J. 299, 309-10 (1993).

Second, defendant argues he was denied a fair trial because he was denied the right to confront the witnesses against him. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The text of our state constitution contains the same language. N.J. Const. art. I, ¶ 10.

Here, the trial court allowed the investigator to testify as to what witnesses told him regarding whether defendant's father abused defendant. Defense counsel objected on hearsay grounds, and the State argued it elicited the testimony not for its truth, but rather to show why the investigation proceeded the way it did. Furthermore, the State later called several witnesses who testified they never saw defendant's father abuse defendant. The

14

trial court allowed the testimony; however, it failed to provide a limiting instruction to the jury.

Although the investigator's statements may have been inadmissible and the court did not provide a limiting instruction, we find no prejudice to defendant in allowing them. The State later elicited the same testimony from witnesses, who defendant had the opportunity to confront. Accordingly, we find any error harmless.

V

Defendant contends he was denied a fair trial when the trial court permitted the State's expert to offer testimony on matters not addressed in his report. We are not persuaded.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). Specifically, "[t]rial judges have discretion to preclude an expert from testifying to opinions not contained in his or her report or in any other discovery material." Anderson v. A.J. Friedman Supply Co., 416 N.J. Super. 46, 72 (App. Div. 2010) (citing Ratner v. Gen. Motors Corp., 241 N.J. Super. 197, 202 (App. Div. 1990)). We will only reverse the decision of the trial court for an abuse of that discretion. Townsend, 221 N.J. at 53.

Here, the testimony in question deals with a tape recording of an argument between defendant and his father allegedly showing abuse. Neither the defense expert nor the State's expert included the recording in their reports because a clear version of the recording was not initially available. First, the defense expert attempted to testify regarding the recording and the State objected. The court allowed the defense expert to testify that he listened to the tape, it assisted him in assessing defendant's credibility, and the content supported the defense's abuse theory.

Next, the State's expert began to testify regarding the recording. Defense counsel objected on the same grounds that he did not include the recording in his report. The court ruled the State could ask the expert about what he heard, but not ask him how the enhanced tape affected his opinion. The court then instructed the jury to strike the expert's prior testimony regarding the recording and not use it in deliberations. Subsequently, the State only asked the expert if he listened to the recording, and did not elicit any testimony regarding his opinion of the recording.

The trial court precluded the State's expert from offering an opinion regarding the recording. Furthermore, the court allowed the defense expert to offer his opinion on the recording despite

16                                                                A-3706-15T3

not including it in his report. Accordingly, we reject defendant's contention he was denied a fair trial.

VI

Defendant contends he was denied a fair trial when the prosecutor improperly denigrated the defense expert. We disagree.

"[P]rosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). They are "afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. (citations omitted). Prosecutors "may comment on facts in the record and draw reasonable inferences from them . . . ." State v. Lazo, 209 N.J. 9, 29 (2012) (citing State v. Smith, 167 N.J. 158, 178 (2001)). However, "prosecutors should not make inaccurate legal or factual assertions during a trial . . . ." State v. Reddish, 181 N.J. 553, 641 (2004) (quoting Smith, 167 N.J. at 178). Nor may prosecutors denigrate the defense. Lazo, 209 N.J. at 29 (citing Frost, 158 N.J. at 86).

Here, in her summation, the prosecutor: (1) argued the defense expert was not qualified to give opinions on post-traumatic stress disorder because his background was largely in education; (2) repeated several times that the expert's opinions could not be

trusted because he was on a "mission" to make a finding consistent with the defense, and ignored all contradictory evidence; and (3) argued the evidence did not support the expert's conclusion that defendant suffered from post-traumatic stress disorder. Defense counsel made no objection to the prosecutor's summation.

Defense counsel also made questionable remarks during his summation: (1) he mocked the State's expert's statement that he failed to see how a well-trained police officer would point a gun at anyone let alone his son, asking "[does] he read the papers?"; (2) he described as "ridiculous" and "preposterous" the expert's opinion that defendant's father had good intentions for defendant in pushing him to play football; (3) he asserted that, unlike the State's expert who was simply an "advocate" for the State, the defense expert was "painfully" honest and answered questions truthfully; (4) he disparaged as "ridiculous" the State's expert's statement that defendant had many friends; (5) he claimed the expert did not want to talk to defendant's mother because she might have said something that "wouldn't fit" with his theory that defendant had carried out a long-term plan; (6) he asserted the expert distorted the facts surrounding defendant's childhood; (7) he stated the expert argued with defense counsel; and (8) he asked "what planet does [the expert] live on?"

When viewed side-by-side, defense counsel delivered a far more inflammatory closing argument attacking the State's expert than the prosecutor's comments regarding the defense expert. Furthermore, the trial judge repeatedly instructed the jury that the attorney's remarks made in their summations were argument and not evidence. We trust the jury followed the court's instruction. See State v. Smith, 212 N.J. 365, 409 (2012). Accordingly, we reject defendant's contention he was denied a fair trial because of prosecutorial misconduct during the summation.

VII

Finally, defendant contends the trial court erred in imposing an excessively long sentence. We disagree.

In reviewing a sentence on appeal, we assess the trial court's "sentencing determination under a deferential standard of review." State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). "We are 'bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record.'" Ibid. (alteration in original) (quoting Lawless, 214 N.J. at 606).

"In determining the appropriate sentence to impose within the range, judges first must identify any relevant aggravating and

mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." State v. Case, 220 N.J. 49, 64 (2014) (citing State v. Fuentes, 217 N.J. 57, 72 (2014)). "The finding of any factor must be supported by competent, credible evidence in the record." Ibid. (citing State v. Roth, 95 N.J. 334, 363 (1984)). Because "a defendant should be assessed as he stands before the court on the day of sentencing, . . . the sentencing court must consider a defendant's relevant post-offense conduct in weighing aggravating and mitigating factors." State v. Jaffe, 220 N.J. 114, 116 (2014) (citing State v. Randolph, 210 N.J. 330 (2012)).

First, defendant contends the trial court improperly relied on recordings of conversations between defendant and his mother while defendant was in jail. The trial court permitted the prosecutor, over a defense objection, to play excerpts from those recordings, which the State alleged supported aggravating factor three (the risk of re-offense). In the recordings, defendant made various statements regarding gun violence, physical violence, and his disdain for rules. The State also submitted a "hit list" allegedly maintained by defendant and obtained from a prison informant.

At sentencing the court found aggravating factor three (the risk of re-offense) applied. The court found the recordings supported aggravating factor three. However, the court also

considered "evidence that the defendant denied responsibility for the crime, has shown a lack of remorse until today . . . [and has] issues with respect to his ability to control his anger [and] lying to protect himself."

We find the trial court properly relied on the post-offense recordings in analyzing aggravating and mitigating factors. See Jaffe, 220 N.J. at 116. The court also relied on other competent credible evidence; therefore, we affirm the finding of aggravating factor three.

Second, defendant contends the twenty-year sentence for manslaughter was excessive. The court went through each of the aggravating factors the State requested the court consider. The court then went through all of the mitigating factors defendant requested the court consider. In the end, the court found aggravating factors three and nine, and mitigating factors four and seven, and that the factors were in balance. Because the factors were in balance, the court imposed a mid-point sentence of twenty years. See Fuentes, 217 N.J. at 73 (quoting State v. Natale, 184 N.J. 458, 488 (2005)) ("[I]f the aggravating and mitigating factors are in equipoise, the midpoint will be an appropriate sentence."). Because "the trial court properly identifie[d] and balance[d] aggravating and mitigating factors

. . . supported by competent credible evidence," we affirm the twenty-year sentence for aggravated manslaughter. See Grate, 220 N.J. at 337.

Third, defendant contends the hindering sentence should have run concurrent to the sentence for manslaughter. Our Supreme Court adopted the following "criteria as general sentencing guidelines for concurrent or consecutive-sentencing decisions":

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence shall be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominately independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;
>>
>> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>>
>> (d) any of the crimes involved multiple victims;
>>
>> (e) the convictions for which the sentences are to be imposed are numerous;
>
> (4) there should be no double counting of aggravating factors;

> (5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .[2]
>
> [State v. Yarbough, 100 N.J. 627, 643-44 (1985) (footnote omitted).]

Concurrent or consecutive sentences are at the discretion of the sentencing judge. Carey, 168 N.J. at 422 (citing N.J.S.A. 2C:44-5(a)). "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011).

Here, the trial court went through the factors listed under item three of the Yarbough factors. The court found the crimes of manslaughter and hindering had independent objectives, involved separate acts, and involved different victims, supporting a consecutive sentence; however, the fact that the crimes were committed at the same time and place supported a concurrent sentence. The court also considered the "principal that there should be no free crimes," and concluded the hindering sentence will run consecutive to the manslaughter. Because the trial court "evaluate[d] the Yarbough factors in light of the record," we will not disturb its ruling. See Miller, 205 N.J. at 129.

---

[2] An amendment to the statute later superseded a sixth guideline. State v. Carey, 168 N.J. 413, 423 n.1 (2001).

We therefore affirm defendant's convictions and the sentences imposed, but remand for the trial court to vacate the sentence on the merged unlawful possession of a weapon count. We do not retain jurisdiction.

Affirmed in part, remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3706-15T3