**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1191-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIO J. PINA-CATENA, a/k/a
JULIO J. CATENA, JULIO
PINACATENA, and JULIO J.
PINACATENA,

     Defendant-Appellant.

_____

Submitted October 30, 2018 – Decided  November 30, 2018

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-10-1850.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael J. Confusione, Designated Counsel, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Julio J. Pina-Catena appeals from the judgment of conviction, entered by the trial judge after a jury found defendant guilty of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), second-degree burglary, N.J.S.A. 2C:18-2, third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), third-degree computer theft, N.J.S.A. 2C:20-25(a), fourth-degree computer theft, N.J.S.A. 2C:20-25(f), and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4). At sentencing, the trial judge imposed the following prison terms: ten years, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for second-degree aggravated assault; a consecutive seven years with an eighty-five percent period of parole ineligibility pursuant to NERA, for second-degree burglary; a consecutive four years imprisonment for third-degree hindering; and concurrent sentences for the criminal mischief, weapon possession, and computer theft convictions.

Defendant presents the following arguments for our review:

> Point 1      The references to defendant's practice of
>              Santeria violated N.J.R.E. 404[(]b[)] and
>              infringed defendant's right to a fair trial on
>              the charges before the jury at trial below.

2                                                    A-1191-16T1

Point 2     The trial court erred in denying defendant's motion for mistrial because of a <u>Brady</u> violation.

Point 3     Defendant's sentence is improper and excessive.

We affirm defendant's conviction and sentence on all counts. We first generally describe the facts surrounding the crimes, then address each of defendant's specific arguments, and their attendant facts, in turn.

I.

On March 4, 2011, after finishing work, Adrian Martin returned to his and his parents' home in Wallington, where he found his father, Nelson,[1] severely beaten, and the house vandalized and damaged. Nelson suffered fractures to his skull and vertebrae, and a hemorrhage in his brain, causing memory loss.

Police investigated defendant and Lance Debler, former boyfriends of Adrian, as possible suspects. Debler informed an investigator that he had been at work the entire day of the incident, and police verified his alibi. Defendant claimed he remained at his apartment in Rutherford the entire day; however, defendant's cell phone records indicated that at 7:08 a.m., 7:13 a.m., 1:02 p.m., and 2:11 p.m., his

---

[1] Because the victim, Nelson Martin, and his children share a common surname, this opinion refers to them by their first names, for ease of reference. We intend no disrespect by this informality.

A-1191-16T1

cell phone connected to cellular towers in Wallington, near the crime scene. The police questioned the residents of nearby households, and one neighbor reported seeing a red Toyota Camry, with distinctive rain guards, parked in front of the victim's household between 7:00 and 7:15 a.m., while another neighbor reported seeing a red Toyota sedan nearby. At the time of the incident, defendant drove a red 2009 Toyota Camry with distinctive rain guards over its windows.

Evidence collected at the scene of the incident suggested that the perpetrator practiced Santeria, a religion popular in the Caribbean that includes elements of Roman Catholicism. Defendant practices Santeria; during their relationship, he initiated Adrian into Santeria, and also attempted to initiate Adrian's sister, Caridad, into Santeria. At the crime scene, the perpetrator ransacked Adrian's room and placed items associated with Santeria on display. Police found a batea, or wooden bowl, which Adrian kept in a closet, placed in the corner of his room – Adrian purchased the batea while living with defendant. A candle of Saint Barbara, taken from Adrian's dresser, was found lit on top of a china cabinet beside religious statues belonging to the Nelson family. Alongside the candle was a peacock feather. According to Adrian, defendant kept peacock feathers in their apartment and used them for religious purposes. Feathers and a hammer were found in defendant's apartment during the execution of a search warrant.

A-1191-16T1

Finally, the perpetrator defaced framed photographs of Caridad throughout the home, scratching her eyes out of the photographs; in addition, "U R filthy bitch" was written on her Holy Communion picture. In Adrian's room, "you fuck with my friend, you die" was scratched into the wall.

In 2013, defendant was tried jointly with Kenneth Cabrera before a judge and a jury. The jury returned a partial verdict, finding defendant not guilty of two counts of hindering, but could not reach a verdict on eight other charges. In June and July 2016, defendant stood trial on the eight remaining charges, but this time without a co-defendant, and a jury found defendant guilty of all charges.

Prior to the second trial, defendant sought to prevent State witnesses from giving testimony, which had been admitted in the first trial, regarding defendant's practice of Santeria. The State sought to have this evidence admitted under N.J.R.E. 404(b) for the purpose of identification to assist in linking defendant to the evidence collected at the crime scene. After a Rule 104 hearing, the trial judge ruled the evidence admissible, subject to a limiting instruction to the jury as to how to consider the evidence.

Two weeks into the trial, on July 5, the trial judge learned that on July 1, the State received access to Adrian's email account, from which it discovered a March 16, 2011 email sent to Adrian from Misty Koons, a friend of Debler, expressing

disappointment in how Adrian handled his breakup with Debler. Prior to the first trial, the State discovered from Debler's hard drive what it thought was a March 15, 2011 email from Koons to Adrian, which contained threatening language, but it actually was only a draft of an email that was never sent. Upon discovering the March 15 draft, the State sent a printed copy of the draft to defendant's counsel, along with a duplicate electronic copy of Debler's entire hard drive. In the first trial, the defense used the March 15 draft in support of its theory that Debler or Koons committed the crime – defendant also had Adrian testify that he received the March 15 draft. In reality, however, Debler read the draft and suggested that Koons remove the threatening language – the March 16 email to Adrian did not contain threatening language. The State sent the March 16 email to defendant's counsel immediately upon its discovery. The defense then moved for a mistrial, arguing that the new evidence advanced its theory that Debler or Koons committed the crime – the trial judge denied the motion.[2]

---

[2] The judge explained, "I [am] not going to declare a mistrial. But before I even consider barring its use I think we need to hear from Misty Koons." The judge was skeptical of defendant's claim of prejudice since Koons could still testify to the fact that she prepared the March 15 email, exhibiting an intent to send it to Adrian. If so, this would "corroborate[] [the defense's] opening argument."

Later in the trial, Misty testified that she prepared both versions of the email, and that Debler found the draft email was "a little threatening." Adrian also testified that he in fact received the March 16 email from Koons.

On July 14, defendant made a separate motion for a mistrial. During a <u>Rule 104</u> hearing that day regarding the cell phone evidence against defendant, Lt. Keith Delaney of the Bergen County Prosecutor's Office testified regarding a report that set forth the relevant cellular phone evidence against defendant. Later that day, during the cross-examination of Lt. Delaney, defense counsel asserted that some of the cell site numbers referred to in Lt. Delaney's report were not included in the key provided to defendant – apparently defense counsel was provided with an outdated key from the telephone company, which did not include all of the cell site numbers referred to in the State's cell phone report. The judge denied defendant's motion for a mistrial, but did adjourn the trial to July 19 to allow defense counsel to receive and review the correct key. On July 19, Lt. Delaney completed his testimony. On July 20, defendant again moved for a mistrial, which the judge again denied.

II.

Defendant first contends his right to a fair trial was violated when the trial court admitted testimony and statements by the prosecution regarding defendant's practice of Santeria. We disagree.

Defendant specifically complains of the following statements made by the prosecutor and evidence admitted at trial:

1. In her opening statement, the prosecutor stated that defendant introduced Adrian to Santeria, a religion brought to America by "African slaves"; that defendant was Adrian's "godfather" in the Santeria religion; and that Nelson and Caridad were "adamantly opposed" to Adrian's involvement with Santeria.

2. Caridad's testimony that defendant tried to initiate her into Santeria, and said that if she refused then she would not get married and would be "barren."

3. Adrian's testimony that defendant claimed to have "visions" and that "spirits were talking to him and telling him that" certain things "had to be done."

Pursuant to N.J.R.E. 404(b), "[e]xcept as otherwise provided by [N.J.R.E.] 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." However, "[s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is 'a "bad" person in

general.'"  State v. Cofield, 127 N.J. 328, 336 (1992) (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)).

In, Cofield, our Supreme Court announced a four-prong test to guide trial courts in determining the admissibility of evidence of other crimes, wrongs, or acts:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Id. at 338 (citation omitted).]

Determinations on the admissibility of such evidence "are left to the discretion of the trial court: 'The trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process. Its decisions are entitled to deference and are to be reviewed under an abuse of discretion standard.'"  State v. Marrero, 148 N.J. 469, 483 (1997) (quoting State v. Ramseur, 106 N.J. 123, 266 (1987)).  "Only where there is a 'clear error of judgment' should the 'trial court's conclusion with respect to that balancing test' be disturbed."  Id. at 483-84 (quoting State v. DiFrisco, 137 N.J. 434, 496-97 (1994)) (other citation omitted).

Before trial, the judge reviewed at length with counsel the admissibility of defendant's practice of Santeria, and related evidence. The judge applied the Cofield test and determined that the challenged testimony and evidence was "relevant to prove identity[,] given what was found at the crime scene[,] . . . particularly[,] the photographs [of Caridad] that were vandalized . . . ." He found that the events alleged from the evidence actually occurred by a clear and convincing standard of proof, and were sufficiently similar to the charged offenses. "Most importantly," he ruled, "the probative value is not outweighed by the prejudice."

At trial, after testimony regarding defendant's practice of Santeria was given, the trial judge instructed that it was offered for the "specific, narrow" purpose of proof of identity linking defendant to the crime scene, and not for propensity. Specifically, the jury was instructed to consider whether "the customs and practices of Santeria utilized by defendant are so similar and so unique to the crime he is charged with commit[ing] that you may infer the same person committed both of them." The judge further stated that "the religion of Santeria is not on trial, and you should not in any way presume, conclude, or infer that the defendant is guilty of any of these offenses just because of whatever practices . . . that this witness or any other witnesses says occurs."

We find the admitted testimony regarding defendant's practice of Santeria, and acts therefrom, admissible under N.J.R.E. 404(b) as proof inferring defendant's identification as the perpetrator. Consideration of the Cofield factors supports admissibility, as the evidence collected at the crime scene makes defendant's alleged prior acts relevant to material issues of the case, particularly the identification of the perpetrator. The evidence is clear and convincing, as multiple witnesses testified to it and were subject to cross examination. Although the testimony likely had some prejudicial effect, the trial court did not clearly abuse its discretion in allowing the testimony.

III.

Defendant next contends that the prosecutor improperly withheld two pieces of evidence from defendant: 1) the additional email evidence from Koons to Adrian, which was admitted in the middle of trial; and 2) the "key code" relied on by the detective in interpreting defendant's cell phone data, which had not been provided to the defense in discovery. Defendant argues that these alleged discovery violations infringed his right to know the State's case against him within a reasonable time to prepare for his defense, warranting reversal of his convictions and a remand for a new trial.

11

The State has a "constitutional obligation to provide criminal defendants with exculpatory evidence in the State's possession . . . ." State v. Marshall, 148 N.J. 89, 154 (1997). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." State v. Knight, 145 N.J. 233, 245 (1996) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). In order to make a Brady claim, a defendant must show three criteria: "(1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268-69 (1999) (citation omitted).

As to the first factor, the "disclosure rule applies to information of which the prosecution is actually or constructively aware." State v. Nelson, 330 N.J. Super. 206, 213 (App. Div. 1998) (citing Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)). The lack of actual awareness does not relieve the State of its Brady obligations because the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf. Kyles, 514 U.S. at 437-38.

The second Brady factor is often presumed and few courts have considered exactly what must be shown in order to establish that withheld evidence is favorable to the defendant. Evidence found to be favorable has generally involved information

12

that impeaches the testimony of a government witness.  See State v. Henries, 306 N.J. Super. 512, 533 (App. Div. 1997).  Favorability is not limited to impeachment, however, and it has been recognized in cases where evidence simply bolsters a defendant's claims.  See State v. Nelson, 155 N.J. 487, 497 (1998).

The third Brady factor involves the materiality of the evidence that was withheld.  "[E]vidence is material for Brady purposes 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Marshall, 148 N.J. at 156 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Nelson, 155 N.J. at 500 (quoting Bagley, 473 U.S. at 682).  As our Supreme Court has stated:

> "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."  Rather, the question is whether in the absence of the undisclosed evidence the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence."
>
> [Ibid. (alteration in original) (citation omitted) (quoting Kyles, 514 U.S. at 434).]

In applying the materiality test "where a conviction has followed a full trial, we assess the strength of the State's case, and determine whether introduction of the

suppressed evidence would probably have changed the jury's verdict." State v. Parsons, 341 N.J. Super. 448, 455 (App. Div. 2001) (citation omitted).

After careful review, we conclude that defendant cannot satisfy the test set forth in Brady for any of the discovery items purportedly withheld by the prosecutor. Specifically, we hold that even if the prosecutor did withhold discovery that would have benefited defendant at trial, everything alleged to have been suppressed was ultimately admitted into evidence and used – with ample time to prepare – by defendant's counsel; as a result, we conclude the delayed discovery was not material to the outcome of the case. Koons did not testify until two weeks after defendant's counsel was given the additional information regarding the emails, and at trial Koons testified that she wrote both the March 15 and March 16 emails, and only sent the March 16 email. After it was discovered that defense counsel received an outdated key, the judge adjourned the trial for four days, and then provided defense counsel the opportunity to continue cross-examination of Lt. Delaney. Regarding the materiality or prejudice, defendant only asserts that the additional evidence "includes impeachment material," without any explanation of how he was denied the opportunity to use the material. We therefore find no basis to overturn defendant's convictions based on any alleged discovery violations.

A-1191-16T1

IV.

Defendant asserts two arguments in support of his claim that he received an improper and excessive sentence. As our Supreme Court has reaffirmed, sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

When determining a sentencing term, a trial court must identify whether any of the aggravating factors enumerated in N.J.S.A. 2C:44-1(a) or the mitigating factors in N.J.S.A. 2C:44-1(b) apply, and then balance the applicable factors. Id. at 72. The relevant factors must then be "qualitatively addressed and assigned appropriate weight in a case-specific balancing process." Id. at 72-73 (citing State v. Kruse, 105 N.J. 354, 359 (1987)). The court must also "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence[.]" R. 3:21-4(g). It is especially

15

important that the court provide a "clear explanation 'of the balancing of aggravating and mitigating factors with regard to imposition of sentences and periods of parole ineligibility . . . .'" Fuentes, 217 N.J. at 73 (quoting State v. Pillot, 115 N.J. 558, 565-66 (1989)).

In sentencing defendant, the trial court found significant the following aggravating factors: (1) the nature of the offense (factor one), N.J.S.A. 2C:44-1(a)(1); (2) the seriousness of harm inflicted in the victim (factor two), N.J.S.A. 2C:44-1(a)(2); (3) the risk of re-offense (factor three), N.J.S.A. 2C:44-1(a)(3); and (4) the need to deter defendant and others from violating the law (factor nine), N.J.S.A. 2C:44-1(a)(9). The judge also found mitigating factor seven, that defendant had led a law-abiding life for a substantial period leading up to the incident, N.J.S.A. 2C:44-1(b)(7).

On appeal, defendant first contends that aggravating factors one and two "were part and parcel of the primary aggravated assault crime of which defendant was found guilty." We first note that aggravating factor one was applied only to the criminal mischief charge. As to aggravating factor two, our Supreme Court has held that the factor can be applied to crimes that require "serious bodily injury," such as aggravated assault, as the aggravating factor is a "broader and less precise concept"

than serious bodily injury.  <u>State v. Kromphold</u>, 162 N.J. 345, 358 (2000).  The trial

judge applied these principles, finding:

> The seriousness of the harm is not just physical, the seriousness of the harm again it's emotional to [Nelson], it's clearly mental in the sense that he no longer has his family . . . the relationships that he had, . . . the ability to live the life that he had.
>
> [E]ach one of these family members are haunted for the rest of their life because of the actions of [defendant].  So I weigh heavily the seriousness of the harm caused.

The trial judge made an appropriate finding based on the competent and credible

evidence in the record, which fully supports his finding that aggravating factor two

applies.

Second, defendant contends the trial court should not have imposed

consecutive sentences for aggravated assault, second-degree burglary, and

third-degree hindering.  Our Supreme Court adopted the following criteria as general

sentencing guidelines for concurrent or consecutive-sentencing decisions:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence shall be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominately independent of each other;

> (b) the crimes involved separate acts of violence or threats of violence;

> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

> (d) any of the crimes involved multiple victims;

> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .

[State v. Yarbough, 100 N.J. 627, 643-44 (1985) (footnote omitted).]

Concurrent or consecutive sentences are at the discretion of the sentencing judge.

State v. Carey, 168 N.J. 413, 422 (2001) (citing N.J.S.A. 2C:44-5(a)). "When a sentencing court properly evaluates the Yarbough factors in light of the record, the

18

court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011).

Addressing the factors identified under the third criterion in Yarbough, the judge found the crimes of aggravated assault and second-degree burglary separate from each other, as defendant did not expect Nelson to be present at the home, and rather approached the home only with the intent to vandalize and damage it. As for the hindering offense, the court found an independent objective that was committed at a different time and place – the first offense occurred hours after the incident and at defendant's apartment, and then more hindering offenses were committed days later. Because the trial court "evaluate[d] the Yarbough factors in light of the record," we will not disturb its ruling. See Miller, 205 N.J. at 129.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1191-16T1