# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1993-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

C.O.C.,

    Defendant-Appellant.

_____

> Submitted October 16, 2023 – Decided December 1, 2023
>
> Before Judges Mawla and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 20-01-0038.
>
> Nicholas A. Moschella, Jr., attorney for appellant.
>
> Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy Anne Hulett, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

On March 11, 2020, defendant C.O.C.[1] was convicted by a jury of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count four); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count five).  The victim was defendant's daughter, A.C. who was twelve to thirteen years old at the time the offenses were committed.

Defendant moved for a new trial.  On January 14, 2021, the court denied that motion.  On February 19, 2021, the court sentenced defendant to the following custodial terms: (1) forty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on count one; (2) eight years subject to NERA, on count two to be served consecutive to count one;  (3) four years on count four to be served consecutive to counts one and two;  and (4) eight years on count five.  The court did not impose a consecutive sentence on count five.

Defendant now appeals from his convictions and sentence, as well as the order denying his motion for a new trial.  Based on our review of the record and the applicable legal principles, we affirm the conviction and order denying the

---

[1] We use initials to protect the identity of the child victim of sexual assault.  R. 1:38-3(c)(9).

motion for a new trial. We also affirm the sentence imposed, but remand for the limited purpose of providing a statement on the overall fairness of the sentence pursuant to State v. Torres.[2]

## I.

A.C turned thirteen in December 2016. The State alleged defendant committed acts of sexual assault against A.C. from October 1, 2016, until May 9, 2017. At that time, A.C. was living in East Brunswick with defendant, her twin brother, her sixteen-year-old brother (C.C.), and defendant's girlfriend. A.C. attended middle school in East Brunswick.

On the morning of May 9, 2017, A.C. argued with defendant's girlfriend before A.C. left for school. Defendant, who had already left for work, spoke with A.C. on the phone about the argument. She told defendant she packed her bags and was leaving and not returning home.

A.C. did not arrive at school and school authorities searched for her. A school security officer found her in a park near the school. She was very upset. A.C. said she did not want to go home because her father was touching her. The security officer took A.C. to the school, and school officials contacted the East Brunswick Police.

---

[2] State v. Torres, 246 N.J. 246 (2021).

A-1993-20

East Brunswick Police Detective Crispin Ferrace responded to the school and spoke with A.C. A.C. was then transported to police headquarters. Detective Ferrace took a statement from A.C. at police headquarters. A.C. said her father began touching her several months before, and the touching continued through May 2017. She told police the touching started when defendant's girlfriend went into the hospital.

Defendant arrived at the police station to retrieve A.C. Detective Ferrace and Detective Jason Mendelson of the Middlesex County Prosecutor's Office conducted a video recorded interview of defendant. Officers read defendant his Miranda[3] rights. Defendant confirmed he understood his rights and signed the standard Miranda rights form indicating he understood his rights and agreed to waive them and speak with the officers. Defendant admitted he touched A.C. over and under her clothes and performed oral sex on her, and A.C. touched his penis causing him to be aroused.

Defendant moved to suppress the statement, and the State moved to admit the statement pursuant to N.J.R.E. 803(b)(1). In the alternative, defendant argued the court should redact "any discussion of [C.C.]; . . . [and] discussion of any touching by and between the defendant's children."

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1993-20

The trial court conducted a two-day <u>Miranda</u> hearing.  The court reviewed the recorded statement and heard testimony from Detective Mendelson.  Defendant did not testify at the Miranda hearing.  On May 1, 2019, the court denied defendant's motion to suppress in an oral opinion finding defendant voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights and gave his statement voluntarily.

On January 8, 2020, a grand jury indicted defendant on charges of: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(a) (count three); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count four); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count five).

The trial occurred during February and March 2020.  At trial, A.C. testified that defendant touched her for the first time when his girlfriend was in the hospital after she attempted suicide.  The State established through another witness that defendant's girlfriend was hospitalized from October 18 until October 24, 2016.

On that first occasion, A.C. and defendant were lying on defendant's bed watching a movie.  Defendant "grabbed" and touched her breasts over and under

her clothes. He also touched and "rubbed" A.C.'s vagina with his hands and touched and "licked" her vagina with his mouth. Defendant was holding and rubbing her legs when this occurred. Defendant later apologized to her, told her not to tell anyone, and claimed he did it because he was lonely.

Another incident of abuse occurred soon after defendant's girlfriend returned from the hospital. Defendant and A.C. were in her brothers' room and defendant touched and licked her breasts and licked her vagina.

On one later occasion, A.C. "had to perform oral sex" on defendant for "a couple minutes." On another occasion, A.C. masturbated defendant's penis for "like five minutes." The last time defendant touched her inappropriately was shortly before she ran away on May 9, 2017. The night before she ran away, defendant told her "he was going to come into [her] room," which meant, to her, that he was going to come "touch [her] private areas" and "breasts." A.C testified that defendant touched her private areas and her breasts "probably about [twenty times]."

The State moved to admit a redacted version of defendant's recorded statement into evidence. It was admitted without objection and played for the jury. The statement was approximately one hour and forty minutes. Before the video was played, the court read the Model Jury Charges (Criminal), "Redacted

Recorded Statement of Defendant" (Oct. 2014) and <u>Model Jury Charges</u> <u>(Criminal)</u>, "Statements of Defendant (Allegedly Made)" (June 2010). Defendant did not raise any objection to those charges.

Defendant testified in his own defense. He denied ever touching A.C. inappropriately. He testified that he had never been interviewed by police before and he was scared. He felt the detectives were trying to get him to confess to what they believed to be the truth, and he was not treated fairly. He did not ask for a lawyer because he thought he was only at the police station to pick up his kids and answer some questions about why A.C. ran away. He believed that if he confessed, he would be able to take his kids and go home. According to defendant, his confession was not truthful.

Before instructing the jury, the court conducted a final jury charge conference. Defendant did not raise any objections to the proposed jury instructions. During deliberations, the jury requested to view "the video of the confession, starting at the confession point at the [seventy-five]-minute marker." The court reviewed the jury's request with counsel. Defendant did not object, and the portion of the recorded statement requested was shown to the jury. Defendant did not request any additional portions of the statement be played and did not request any additional jury instructions. The jury resumed deliberations.

A-1993-20

Later that afternoon, the jury delivered its verdict. Defendant was convicted on counts one, two, four, and five and acquitted on count three.

Defendant filed a motion for a new trial pursuant to Rule 3:20-1. He argued that the verdict was against the weight of the evidence based on the "credibility of the victim" and because "there was some conflict with some timeline[s], and when these acts alleged[ly] occurred." Defendant also argued that there was an issue "on duration, scope, and intensity" of the recorded statement, and playing back a portion of the statement at the jury's request put "some of the onus . . . on the defendant, and/or . . . against the credibility of the victim." Defendant claimed that "as far as the inconsistencies . . . portions of the victim's statement should have been . . . instructed upon differently" and the court's "limiting instruction did [not] fully . . . make the jury aware, or . . . allow them to consider it when those inconsistencies arose."

Following oral argument, the court denied the motion for new trial in an oral opinion. The court found the jury reached its verdict after carefully assessing the evidence including A.C.'s testimony, defendant's recorded statement, and defendant's trial testimony. It noted that defendant's recorded statement was consistent in many respects with A.C's testimony. The court also determined the jury instructions were reviewed and approved by defense counsel

8

and were consistent with the model criminal jury charges. The court found there was no reason to "second-guess" the jury's verdict.

On February 11, 2021, defendant was sentenced. On February 19, 2021, the court entered the judgment of conviction. This appeal followed.

Defendant raises the following points on appeal:

> Point One
>
> DEFENDANT WAS FOUND GUILTY AGAINST THE WEIGHT OF THE EVIDENCE AND WAS ACCORDINGLY DENIED HIS RIGHT TO A FULL AND FAIR TRIAL ON THE MERITS. . . .
>
> Point Two
>
> THE COURT ERRONEOUSLY DENIED THE MOTION OF DEFENDANT FOR A NEW TRIAL AND FAILED TO PROPERLY ADDRESS ARGUMENT OF DEFENDANT AS TO RULE 3:20-1. . . .
>
> Point Three
>
> THE COURT RELIED ON IMPROPER FACTORS DURING SENTENCING AND THEREFORE THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE. . . .

II.

Defendant contends the trial court erred by denying his motion for a new trial. Specifically, he argues "the [c]ourt's failure to properly consider the

irreparable harm potentially caused by the allowance of the jury to review the specific portion of [defendant's statement] dealing only with [his] confession" deprived him of a full and fair trial. Defendant also argues the court should have granted the motion because of inconsistencies in A.C.'s testimony. We are not convinced.

Rule 3:20-1 provides:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. . . . The trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (internal quotation omitted). When the factfinder rationally concludes the essential elements of the crime are present beyond a reasonable doubt, a reviewing court will not find a manifest denial of justice as required by Rule 3:20-1. State v. Jackson, 211 N.J. 394, 413-14 (2012). A reviewing court will "weigh heavily the trial court's 'views of credibility of witnesses, their demeanor, and [its] general "feel of the case."'" State v.

Carter, 91 N.J. 86, 96 (1982) (alteration in original) (quoting State v. Sims, 65 N.J. 359, 373 (1974)). "If the trial court acts under a misconception of the applicable law, however, the appellate court need not give such deference." State v. Brown, 118 N.J. 595, 604 (1990).

The trial court's opinion denying defendant's motion carefully evaluated the testimony and evidence presented at trial. The court described the demeanor of the witnesses and noted that the jury intently watched and paid attention to the testimony. The court reviewed A.C.'s testimony regarding the alleged acts of touching and other sexual conduct and concluded that the jury found her credible.

Defendant's contention that the court failed to consider his arguments about the playback of his recorded statement finds no support in the record. In fact, the court expressly considered and rejected defendant's arguments relating to the statement and the jury instructions the court provided.

The evidence produced at trial was plainly sufficient for the jury to rationally conclude the State proved the essential elements of the crimes beyond a reasonable doubt. A.C. testified defendant touched her breasts and vagina and performed oral sex on her before and after she turned thirteen. As the trial court noted, defendant's recorded statement was consistent with A.C.'s testimony in

11

many respects. The jury was instructed properly on its role in evaluating the evidence, including the credibility of the witnesses, and it was the role of the jury, not the trial judge, to consider the impact of any alleged inconsistencies in A.C.'s testimony. It was not an abuse of discretion to deny defendant's motion for a new trial.

### III.

Defendant next contends the trial court failed to consider arguments raised in his motion for a new trial. Defendant first argues he was not permitted to present evidence of third-party guilt. This argument is raised for the first time on appeal and lacks merit.

When a defendant raises an issue for the first time on appeal, we review the action or omission complained of for plain error. R. 2:10-2; State v. Macon, 57 N.J. 325, 333 (1971). Under this standard of review, we disregard any error or omission "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Ross, 229 N.J. 389, 407 (2017) (quoting State v. Williams, 168 N.J. 323, 336 (2001)).

> A defendant who does not raise an issue before a trial
> court bears the burden of establishing that the trial

court's actions constituted plain error . . . because "to rerun a trial when the error could easily have been cured on request[] would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal."

[Ibid. (quoting State v. Weston, 222 N.J. 227, 295 (2015))].

In support of this argument, defendant contends his son was also charged as a juvenile with similar crimes against A.C. Defendant then argues "the scenario existed that [he] was at least putting forth the claim that he in fact confessed to and was being [p]rosecuted to protect himself and his son from consequence[s] of false accusations." Defendant, however, never asserted any such argument in the trial court. In fact, he successfully applied to have any references to his son redacted from his recorded statement and excluded at trial.

Defendant does not articulate how such an argument would have constituted a meritorious third-party guilt defense. A.C. testified defendant committed the offenses against her and the jury found her credible. There is no reason to conclude the jury would have reached a different verdict if it learned defendant's son was also accused of similar acts against her at different times.

Defendant has not established he was prevented from asserting a meritorious third-party guilt defense. There is no basis to find error, let alone plain error. Even if we found error, which we do not, because defendant actively

sought to exclude evidence of his son's alleged conduct at trial, defendant's claim would be barred by the doctrine of invited error. "Trial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974).

Defendant also argues the trial court failed to provide an appropriate limiting instruction after the portion of his recorded statement the jury requested was played back. Specifically, defendant argues "the duration, scope and intensity of the interrogation was . . . undermined." We are not persuaded.

Defendant neither objected to the jury's request to play back a portion of defendant's statement, nor did he request any additional jury instructions relating to the portion played back. Because these arguments were raised for the first time post-trial, we review for plain error. R. 2:10-2. When a litigant does not request a limiting instruction at trial, we review for plain error. State v. Cole, 229 N.J. 430, 455 (2017) (citing State v. Montalvo, 229 N.J. 300, 320 (2017)).

"[T]he response to a jury's request for a readback of testimony or a replay of a video recording is vested in the discretion of the trial judge." State v. A.R., 213 N.J. 542, 555–56, (2013). "Generally, once an exhibit has been admitted

into evidence, the jury may access it during deliberations, subject to the court's instructions on its proper use." State v. Burr, 195 N.J. 119, 133-34 (2008).

Defendant has not established plain error. It was not an abuse of discretion for the trial court to play back the portion of the statement the jury requested. The jury previously viewed the entire statement. Playing back the requested portion did not undermine the jury's ability to assess the nature and content of the entire statement.

Defendant does not identify any jury instruction the trial court failed to provide. The court instructed the jury appropriately regarding the recorded statement when it was initially played for the jury and again during the court's final instructions. We do not perceive any error, much less plain error.

IV.

Defendant argues the trial court erred by admitting his recorded statement. Defendant did not appeal from the court's May 1, 2019 order denying his motion to suppress. We will nevertheless consider the merits of his arguments.

Defendant contends his statement was not given voluntarily, and the detectives improperly minimized the significance of the Miranda warnings by referring to them as "protocol." These arguments are not persuasive.

A-1993-20

In reviewing a trial court's decision to admit a defendant's statement to law enforcement, we give deference to the court's factual findings. State v. Elders, 192 N.J. 224, 244 (2007). We do so in recognition of the trial court's "'opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" Id. at 243 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The reviewing court "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

"The administration of Miranda warnings ensures that a defendant's right against self-incrimination is protected in the inherently coercive atmosphere of custodial interrogation." State v. A.M., 237 N.J. 384, 397 (2019). Accordingly, a defendant "must be warned prior to any questioning that [they have] the right to remain silent, . . . anything [they say] can be used against [them] in a court of law, [and] . . . [they have] the right to the presence of an attorney . . . ." Miranda, 384 U.S. at 479.

A-1993-20

"A confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights[,]" and provided a "'voluntary, knowing[,] and intelligent'" waiver of "any or all of those rights." State v. Hubbard, 222 N.J. 249, 265 (2015) (quoting State v. Hreha, 217 N.J. 368, 382, (2014)). "New Jersey law requires that the prosecution 'prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances.'" A.M., 237 N.J. at 397 (quoting State v. Presha, 163 N.J. 304, 313 (2000)). "Furthermore, the State bears the burden of proving beyond a reasonable doubt that a defendant's confession is voluntary and not resultant from actions by law enforcement officers that overbore the will of a defendant." Hubbard, 222 N.J. at 267.

"[A] valid waiver does not require that an individual be informed of all information useful in making his decision." A.M., 237 N.J. at 398 (quoting State v. Nyhammer, 197 N.J. 383, 407 (2009)). "Instead, a knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." Ibid. "In the totality-of-the-circumstances inquiry, courts generally rely on factors such as 'the suspect's age, education and intelligence, advice as to

constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" Ibid. (quoting State v. Miller, 76 N.J. 392, 402 (1978)). "Moreover, courts applying the totality-of-the-circumstances test should look to whether the defendant has had previous encounters with law enforcement and the period of time between when Miranda rights were administered and when defendant confessed." Hreha, 217 N.J. at 383.

The trial court conducted a two-day Miranda hearing during which it reviewed defendant's recorded statement and heard testimony from Detective Mendelson. The court found defendant "from beginning to end, and most especially at the beginning, was cool, calm and collected[,] . . . [understood] what his rights were and . . . [understood] the questions that he was being asked . . . ." "Defendant was read [his Miranda rights], read them aloud as well himself, acknowledged them verbally and in writing and waived" them. The court observed defendant "clearly appeared sober and responsive" and he "[n]ever invoked his rights nor terminated the interview at any point." The court also observed defendant was "very interactive and comfortable and responsive to" the detectives.

The court found the statement was given voluntarily and was not the product of coercion. The court acknowledged that the "interrogation was lengthy" but found "during the entirety of the statement, . . . [defendant showed] that he was a highly intelligent individual and took a thoughtful approach to his dialogue . . . ." The court also found:

> [A]t all points during the interview . . . [defendant] seemed to be in full control of his faculties, decided to answer what he wanted to answer, [and] maintained control of whatever he wanted to remain in control of. Never once did he indicate that his will was[,] or could it be perceived that his will was[,] overborne.

Defendant contends that his statement was not given voluntarily. Specifically, he argues that at trial he testified he felt coerced and fearful for the well-being of his family. He contends that he told the officers he wanted to speak to his mother before he made any incriminating statements, and he was misled as to the purpose of the questioning. He also contends that he asked the officers what his "options" were, and the officers did not explain the specific charges he was facing or the possible consequences of being charged. Defendant argues he was not dissuaded from the notion that he might have been able to go home if he confessed.

The trial court found that defendant's statement was given voluntarily and was not the product of coercion. The court's decision was based on substantial

19

credible evidence, including the court's assessment of the recorded statement and the credibility of the testifying detective. Defendant does not point to anything that would cause us to disturb the court's findings. Defendant never invoked his right to counsel or asked to terminate the questioning. The officers did not mislead him in any way about the charges he faced, nor did they tell him he could go home if he confessed. The officers were not obligated to terminate the interview because defendant said he wanted to speak with his mother. There is no basis to disturb the trial court's conclusion that defendant's statement was given voluntarily and was not the product of coercion.

Relying on State v. O.D.A.-C., 250 N.J. 408 (2022), defendant argues the detectives improperly minimized the significance of the Miranda warnings. Specifically, the detectives told defendant it was "standard protocol . . . to read [the Miranda] rights real quick . . . before [they] start[ed] talking" and "this is just protocol . . . [we need] to make sure you're voluntarily speaking to us."

In O.D.A.-C., the Supreme Court held law enforcement "repeatedly undermined [the Miranda warnings] throughout the interrogation" including, for example, telling the defendant the warnings were "[j]ust a formality" and that anything they discussed would remain "confidential between [them]." Id. at 412-13 (internal quotations omitted).

20

The detectives in this case did not undermine the Miranda warnings during the interrogation. Telling defendant it was "protocol" to read him his rights and make sure he was speaking to them voluntarily is not akin to referring to the warnings as a mere formality. The detectives did not minimize or undermine the significance of the Miranda warnings by doing so.

V.

Defendant next contends the court relied on improper factors during sentencing and the sentence imposed was manifestly excessive. We are not persuaded.

We employ a deferential standard when reviewing a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); State v. Fuentes, 217 N.J 57, 70 (2014). We must affirm a sentence unless: (1) the trial court failed to follow the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or (3) "the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We assess a trial judge's finding of "aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. at 364-65). We are "not to substitute [our] assessment of aggravating and mitigating factors for that of the trial court." Ibid.

We are satisfied the court properly exercised its discretion when analyzing and applying the sentencing factors. The court applied aggravating factor two based on the gravity and seriousness of harm to a vulnerable victim, aggravating factor three based on the fact that defendant engaged in this conduct over a period of several months in various situations and was likely to commit another offense, aggravating factor four because defendant took advantage of his position of trust as A.C.'s father, and aggravating factor nine based on the need to deter. The court gave "great weight" to aggravating factor nine based on the need to deter defendant specifically, and the need to deter sexual assault of children generally.

The court rejected defendant's request for mitigating factor nine because it found a risk defendant would commit another offense in applying aggravating factor three. The court could have applied mitigating factor seven because defendant did not have a criminal record but declined to do so. The court found

22

the aggravating factors substantially outweighed the mitigating factors. The court's findings of aggravating and mitigating factors were based upon competent credible evidence in the record and there is no basis to disturb them.

We are not persuaded by defendant's claim the court erred by imposing consecutive sentences and rejecting his request for merger. "[T]rial judges have discretion to decide if sentences should run concurrently or consecutively." State v. Miller, 205 N.J. 109, 128 (2011); see N.J.S.A. 2C:44-5(a). Judges are permitted to impose consecutive sentences where multiple sentences of imprisonment are imposed and after considering the Yarbough factors. See State v. Yarbough, 100 N.J. 627, 643-44 (1985).

The Yarbough factors essentially focus upon "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." State v. Carey, 168 N.J. 413, 423 (2001) (quoting State v. Baylass, 114 N.J. 169, 180 (1989)). They should be applied qualitatively, not quantitatively. Id. at 427. A court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences. Id. at 427-28; see also State v. Swint, 328 N.J. Super. 236, 264 (App. Div. 2000) (explaining even when "offenses [are] connected by a 'unity of specific

purpose,'" "somewhat interdependent of one another," and "committed within a short period of time," concurrent sentences need not be imposed) (citations omitted). "When a sentencing court properly evaluates the <u>Yarbough</u> factors in light of the record, the court's decision will not normally be disturbed on appeal." <u>Miller</u>, 205 N.J. at 129.

The trial court carefully evaluated the <u>Yarbough</u> factors and determined the sentences imposed on counts two and four would run consecutive to each other and consecutive to count one. The offenses were based on separate and distinct acts of abuse that occurred at different times. Count one was based on an act of sexual penetration, oral sex, that occurred before A.C. turned thirteen. Count two was based on sexual contact, touching A.C.'s breasts and vagina, before she turned thirteen. Count four was based on an act of sexual contact, either defendant touching A.C. or A.C. touching defendant, after A.C. turned thirteen. The court properly evaluated the <u>Yarbough</u> factors in imposing consecutive sentences and we will not disturb the court's decision. The overall sentence does not shock the judicial conscience.

We also reject defendant's contention that the court erred by failing to merge counts one, two and four. Under the doctrine of merger, "a separate sentence should not be imposed on the count which must merge with another

offense." State v. Trotman, 366 N.J. Super. 226, 237 (App. Div. 2004). "The doctrine of merger is based on the concept that 'an accused [who] committed only one offense . . . cannot be punished as if for two.'" State v. Tate, 216 N.J. 300, 302 (2013) (alteration in original) (quoting State v. Davis, 68 N.J. 69, 77 (1975)). The offenses charged in counts one, two, and four each involved different acts of abuse committed at different times. The trial court determined correctly those charges do not merge.

The State asks that we remand the matter for the limited purpose of providing a statement on the overall fairness of the sentence pursuant to Torres, which was decided after defendant was sentenced. There, the Supreme Court held "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses . . . is essential to a proper Yarbough sentencing assessment." Id. at 268. Because the trial court did not have the opportunity to provide an explicit statement explaining the overall fairness of the sentence as required by Torres, we remand for that limited purpose.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

A-1993-20

Affirmed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION